## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

<table>
<tr><td>

KRISTOPHER I. LAPKO, ALAN P. TUCSOK, and BECKY FORBUSH, individually, and as Representatives of a Class of Participants and Beneficiaries of the United Wholesale Mortgage Plan, LLC Profit Sharing Plan and Trust,

     Plaintiffs,

v.

UNITED WHOLESALE MORTGAGE, LLC, BOARD OF DIRECTORS OF UNITED WHOLESALE MORTGAGE, LLC, and UNITED WHOLESALE MORTGAGE, LLC 401(K) COMMITTEE,

     Defendants.

</td><td>

Case No. 2:25-cv-11216

Hon. Susan K. DeClercq
United States District Judge

Hon. Curtis Ivy Jr.
United States Magistrate Judge

</td></tr>
</table>

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants United Wholesale Mortgage, LLC ("UWM") and the UWM 401(k) Committee (the "Committee") move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Complaint because it fails to state a claim upon which relief may be granted.[1]

---

[1] On June 16, 2025, a stipulation and a proposed order dismissing Plaintiffs' claims against the third named Defendant, the "Board of Directors of United Wholesale Mortgage, LLC," were submitted to the Court for approval.

The Complaint sets forth five causes of action, each of which is predicated on the Committee's alleged use of "forfeitures" by some 401(k) plan participants to provide benefits to other plan participants and Plaintiffs' preference that those forfeitures instead be used to pay administrative expenses that were properly charged to participants' accounts.  As explained in greater detail in the accompanying Brief in Support of this Motion to Dismiss:

(1) The Court should dismiss Plaintiffs' ERISA breach of fiduciary duty claims against the Committee (their First and Second Claims) because Plaintiffs' liability theory is contrary to 60 years of guidance issued by the federal legislators and regulators who oversee the administration of retirement plans and Plaintiffs fail to allege any action constituting a fiduciary breach.

(2) The Court should dismiss Plaintiffs' prohibited transaction claims against the Committee (their Third and Fourth Claims) because the Complaint does not identify an action that qualifies as "transaction" under ERISA.

(3) The Court should dismiss Plaintiffs' failure to monitor claim against UWM (their Fifth Claim) because it is derivative of, and fails with, the claims alleged in Counts One through Four.

Under Local Rule 7.1(a), the attorneys for the parties conferred first by email, on May 21, 2025 and June 11, 2025, and then held a conference call on June 12, 2025.  During the conferences, Defendants explained the nature of this Motion, the

legal basis and the relief requested.  Plaintiffs agreed to dismiss their claims against the Board of Directors of United Wholesale Mortgage, LLC, but otherwise did not agree to the relief sought by UWM and the Committee.

WHEREFORE, Defendants UWM and the Committee move the Court for an order dismissing Plaintiffs' Complaint in its entirety.

Dated: June 17, 2025                                     Respectfully submitted,

**GROOM LAW GROUP, CHARTERED**

*/s/ Michael J. Prame*
Michael J. Prame
Andrew Salek-Raham
Hannah M. Stephens
Chidera F. Onyeoziri
1701 Pennsylvania Ave., NW
Washington, D.C.  20006
Tel: 202-857-0620
Fax: 202-659-4503
mprame@groom.com
asalek-raham@groom.com
hstephens@groom.com
conyeoziri@groom.com


**BUSH SEYFERTH PLLC**

*/s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Thomas G. Cribbins (P86891)
100 West Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (282) 822-7807
murray@bsplaw.com

3

mcdonald@bsplaw.com
cribbins@bsplaw.com

*Attorneys for United Wholesale Mortgage,*
*LLC and United Wholesale Mortgage, LLC*
*401(k) Committee*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| KRISTOPHER I. LAPKO, ALAN P. TUCSOK, and BECKY FORBUSH, individually, and as Representatives of a Class of Participants and Beneficiaries of the United Wholesale Mortgage Plan, LLC Profit Sharing Plan and Trust, | Case No. 2:25-cv-11216 |
| Plaintiff, | Hon. Susan K. DeClercq United States District Judge |
| v. | Hon. Curtis Ivy Jr. United States Magistrate Judge |
| UNITED WHOLESALE MORTGAGE, LLC, BOARD OF DIRECTORS OF UNITED WHOLESALE MORTGAGE, LLC, and UNITED WHOLESALE MORTGAGE, LLC 401(K) COMMITTEE, | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.     Whether Plaintiffs' ERISA breach of fiduciary duty claims against the Committee (First and Second Claims) should be dismissed where the claims are contrary to 60 years of guidance issued by the federal legislators and regulators who oversee the administration of retirement plans and Plaintiffs fail to allege any action constituting a fiduciary breach?

II.    Whether Plaintiffs' prohibited transaction claims against the Committee (Third and Fourth Claims) should be dismissed because Plaintiffs fail to allege a "transaction" for purposes of ERISA?

III.   Whether Plaintiffs' breach of the duty to monitor claim against UWM (Fifth Claim) should be dismissed either because it is derivative of their legally insufficient claims in Counts One through Four?

## STATEMENT OF CONTROLLING
## AND/OR MORE APPROPRIATE AUTHORITIES

A series of lawsuits regarding the use of forfeitures in 401(k) plans have been filed nationwide.  Appropriate authorities include decisions in those cases, including *Sievert v. Knight-Swift Transportation Holdings, Inc.*, No. CV-24-02443-PHX-SPL, 2025 WL 1248922 (D. Ariz. April 20, 2025), *appeal pending*, No. 25-3409 (9th Cir. May 25, 2025); *Barragan v. Honeywell Int'l Inc.*, No. 24cv4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Naylor v. BAE Sys., Inc.*, No. 1:24-cv-00536 (AJT/WEF), 2024 WL 4112322 (E.D. Va. Sept. 5, 2024); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("*Hutchins II*"), *appeal pending*, No. 25-826 (9th Cir.); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024); *Madrigal v. Kaiser Foundation Health Plan, Inc.*, No. 2:24-cv-5191, 2025 WL 1299002 at *6-7 (C.D. Cal. May 2, 2025); *Bozzini v. Ferguson Enterprises LLC*, No. 22-cv-05667-AMO, (N.D. Cal. May 29, 2025) (slip opinion); *Steen v. Sonoco Products Co.*, No. 4:24-cv-03105-JD (D.S.C. June 4, 2025) (slip opinion); and *Wright v. JPMorgan Chase & Co.*, No. 2:25-CV-00525 (C.D. Cal. June 13, 2025) (slip opinion).

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................... 1

FACTUAL BACKGROUND .............................................................. 4

LEGAL STANDARD .......................................................................... 5

ARGUMENT ...................................................................................... 6

   I.  Plaintiffs' First and Second Claims for Breach of Fiduciary Duty Fail as a Matter of Law. ............................................................................ 6

     A. Plaintiffs' theory of liability is contrary to sixty years of regulatory guidance. ................................................................................. 7

     B. Plaintiffs' breach of fiduciary duty claims improperly extend ERISA beyond its bounds of protecting only the substantive benefits granted under the express terms of the Plan Document. ................................... 11

     C. The Breach of Fiduciary Duty Claims are Otherwise Implausible. ...... 14

   II.  Plaintiffs' Third and Fourth Claims Alleging Prohibited Transactions Should Be Dismissed Because the Complaint Does Not Identify a "Transaction" Covered by the Statute . ....................................................... 16

   III.Plaintiffs' Fifth Claim Fails to State a Plausible Claim for Breach of the Duty to Monitor. ........................................................................ 20

CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................5

*Barragan v. Honeywell Int'l Inc.*,
  No. 24cv4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024) ... 3, 15, 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................5

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.*,
  168 F.3d 671 (3d Cir. 1999) ......................................12

*Bishop v. Lucent Techs.*,
  520 F.3d 516 (6th Cir. 2008) ......................................5

*Bozzini v. Ferguson Enterprises LLC*,
  No. 22-cv-05667-AMO, (N.D. Cal. May 29, 2025)........................... 3, 10, 15, 19

*Chao v. Hagemeyer N. Am., Inc.*,
  No. CV 06-01173-PMD, 2006 WL 8443663 (D.S.C. Oct. 20, 2006)..................19

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ..............................................14

*Dimou v. Thermo Fisher Sci. Inc.*,
  No. 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)................. passim

*Fifth Third Bancorp. v. Dudenhoeffer*,
  573 U.S. 409, 134 S.Ct. 2459, (2014) ..............................14

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) ...............................................9

*Elias v. Fed. Home Loan Mortg. Corp.*,
  581 F. App'x 461 (6th Cir. 2014).....................................5

*Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*,
770 F.3d 414 (6th Cir. 2014) ................................................................. 14

*Health Cost Controls v. Isbell*,
139 F.3d 1070 (6th Cir.1997) ................................................................ 14

*Hewitt v. Helms*,
459 U.S. 460 (1983) ............................................................................. 11

*Hicks v. Miranda*,
422 U.S. 332 (1975) ............................................................................. 11

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ............................................................................. 12

*Hutchins v. HP Inc.*,
737 F.Supp. 3d 851, (N.D. Cal. 2024) .............................. 10, 13, 15, 18

*Hutchins v. HP Inc.*,
767 F.Supp.3d 912, (N.D. Cal. 2025) .................................. 3, 9, 15, 16

*Kottmyer v. Maas*,
436 F.3d 684 (6th Cir. 2006) .................................................................. 6

*LaRue v. DeWolff, Boberg & Assoc.*,
552 U.S. 248, (2008) .............................................................................. 1

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ...................................................................... 17, 19

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ............................................................... 12

*Madrigal v. Kaiser Foundation Health Plan, Inc.*,
No. 2:24-cv-5191, 2025 WL 1299002 (C.D. Cal. May 2, 2025) ................... 3, 19

*Naylor v. BAE Sys., Inc.*,
No. 1:24-cv-536 (AJT/WEF), 2024 WL 4112322 (E.D. Va. Sept. 5, 2024) .. 3, 13

*Rondigo, LLC v. Township of Richmond*,
641 F.3d 673 (6th Cir. 2011) .................................................................. 1

*Saumer v. Cliffs Nat. Res. Inc.*,
  No. 1:15-CV-954-DAP, 2016 WL 8668509 (N.D. Ohio Apr. 1, 2016) .............20

*Saumer v. Cliffs Nat. Res. Inc.*,
  853 F.3d 855 (6th Cir. 2017) .................................................................20

*Sievert v. Knight-Swift Transportation Holdings, Inc.*,
  No. CV-24-02443-PHX-SPL, 2025 WL 1248922 (D. Ariz. April 20, 2025)
  ........................................................................................................ passim

*Steen v. Sonoco Products Co.*,
  No. 4:24-cv-03105-JD (D.S.C. June 4, 2025) ................................. 3, 19

*Weiner v. Klais & Co., Inc.*,
  108 F.3d 86 (6th Cir. 1997) .....................................................................1

*Wright v. JPMorgan Chase & Co.*,
  No. 2:25-CV-00525 (C.D. Cal. June 13, 2025).......................................3

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ...............................................................17

Statutes

29 U.S.C. §1104(a)(1)(A) ...........................................................................12

29 U.S.C. § 1104(a)(1)(B) ...................................................................... 6, 14

29 U.S.C. § 1104(a)(1)(D) ...........................................................................11

29 U.S.C. § 1106 .........................................................................................18

29 U.S.C. § 1106(a)(1)(D) ...........................................................................17

29 U.S.C. § 1106(b) .....................................................................................16

29 U.S.C. §§ 1104(a)(1) and (a)(1)(A) ........................................................6

IRC § 401(a)(8) ............................................................................................7

<u>Rules and Regulations</u>

Federal Rule of Civil Procedure 12(b)(6) ....................................................1

26 C.F.R. § 1.401-7(a) ...............................................................................7

83 Fed. Reg. 34469 (July 20, 2018)............................................................8

88 Fed. Reg. 12282-01 (Feb. 27, 2023) ..............................................8, 9

## <u>INTRODUCTION</u>

UWM sponsors the United Wholesale Mortgage LLC Profit Sharing Plan and Trust ("Plan") for its employees.[2]  Like other 401(k) plans, the UWM employees who participate in the Plan have individual accounts and they contribute to their individual accounts through salary deferrals.  *See LaRue v. DeWolff, Boberg & Assoc.*, 552 U.S. 248, 250 n.1., 255 (2008) (discussing attributes of 401(k) and other "individual account" plans).  Plan participants are immediately "vested" in the contributions they make to their individual accounts, meaning that they keep those contributions and the earnings thereon even if they leave UWM and go to work for another company.

This case is about the additional "discretionary matching employer contributions" ("Employer Contributions") that UWM voluntarily elects to make to Plan participants' accounts.  PageID.7 (¶¶ 36-37).  UWM annually makes Employer

---

[2] Because the Complaint quotes from the plan document and otherwise refers to the terms of the Plan, the Court may consider the plan document in deciding this motion. *See* PageID.8 (¶¶ 44, 45); *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (concluding that a district court can consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein"); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (concluding that a district court can consider ERISA plan documents that are "incorporated through reference to the plaintiff's right under the plans and…are central to plaintiff's claims.").  A copy of the plan document referred to in the Complaint (the "Plan Document") is attached as Ex. A to the Declaration of Deana Mathews (Mathews Decl.").

1

Contributions totaling 50% of the first 3% of eligible compensation deferred by each employee, up to $2,500.  *Id.*

UWM's Employer Contributions are not immediately vested, but rather vest over time at a rate of 20% per year of credited service for a period of five years. Mathews Decl., Ex. A, Plan Document at Section 1.16.  Under the terms of the Plan, a participant must work five years for the Employer Contributions to fully vest.  *See* PageID.8 (¶ 42).  If a participant's employment ends (*i.e.*, they have a "break in service") before they attain five years of credited service, they forfeit the unvested portion of the Employer Contributions in their account.  *See id.* (¶ 43).

The forfeited Employer Contributions remain in the Plan.  *See id.*  They are allocated and used as part of future Employer Contributions made to other employees/participants.  PageID.2 (¶ 2).

Plaintiffs Kristopher I. Lapko, Alan P. Tucsok, and Becky Forbush ("Plaintiffs") are three former UWM employees.  They claim that, rather than allocate the forfeited Employer Contributions to other participants going forward, the Committee should have provided Plaintiffs with a windfall by using the forfeitures to pay the administrative expenses that were properly charged to participants' accounts.  *Id*. (¶ 4).

2

As courts nationwide have concluded in a series of similar lawsuits,[3] Plaintiffs' claims conflict with and seek to upend 60 years of guidance issued by the federal legislators and regulators who oversee the administration of retirement plans, all of which expressly authorize companies to use the forfeiture of employer contributions by some participants as part of future employer contributions to other participants. The longstanding guidance does not require plan fiduciaries to alter the nature of the forfeitures to something other than employer contributions or to prioritize using forfeitures to pay administrative expenses.

Nor does UWM otherwise have a duty to use forfeitures to give Plaintiffs additional and greater benefits by reducing the administrative expenses properly charged to their accounts. Plaintiffs do not dispute that the Plan expressly provided that participants could be required to pay those expenses. UWM is not required to

---

[3] *See Sievert v. Knight-Swift Transportation Holdings, Inc.*, No. CV-24-02443-PHX-SPL, 2025 WL 1248922 (D. Ariz. April 20, 2025), *appeal filed*, No. 25-3409 (9th Cir. May 25, 2025); *Barragan v. Honeywell Int'l Inc.*, No. 24cv4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Naylor v. BAE Sys., Inc.*, No. 1:24-cv-00536 (AJT/WEF), 2024 WL 4112322 (E.D. Va. Sept. 5, 2024); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("Hutchins II"), *appeal pending*, No. 25-826 (9th Cir.); *Dimou v. Thermo Fisher Sci. Inc.,* No. 23- cv-1732, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024); *Madrigal v. Kaiser Foundation Health Plan, Inc.*, No. 2:24-cv-5191, 2025 WL 1299002 at *6-7 (C.D. Cal. May 2, 2025); *Bozzini v. Ferguson Enterprises LLC*, No. 22-cv-05667-AMO (N.D. Cal. May 29, 2025) (slip opinion); *Steen v. Sonoco Products Co.*, No. 4:24-cv-03105-JD (D.S.C. June 4, 2025) (slip opinion); and *Wright v. JPMorgan Chase & Co.*, No. 2:25-CV-00525 (C.D. Cal. June 13, 2025) (slip opinion).

cover or subsidize administrative expenses with funds that the company previously contributed to the Plan as Employer Contributions.[4]  As such, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## FACTUAL BACKGROUND

The Plan Document defines how the forfeited Employer Contributions can be used in the Plan.  Section 11.10 provides that such forfeitures "shall" be used to restore the accounts of Plan participants when they terminate employment but are later reemployed:

> If a Participant forfeits any portion of his Account Subjection 11.08 because of distribution of his complete vested interest in his Account, but again becomes an Eligible Employee, then the amount so forfeited, without any adjustment for earnings, expenses, losses, or gains of the assets credited to his Account since the date forfeited, shall be recredited to his Account[.] . . . The amount to be recredited pursuant to this paragraph ***shall be derived first from forfeitures, if any, which as of the date of recrediting have yet to be applied as provided in Section 11.09*** and, to the extent such forfeitures are insufficient, from a special contribution made by the Employer.

Mathews Decl., Ex. A, Plan Document at Section 11.10 (emphasis added).

---

[4] Although Plaintiffs cite to and rely in their Complaint on the Plan's Form 5500s annually filed with federal government, they overlook that the Form 5500s describe that Plan participants were not charged for all of the Plan's administrative expenses. The documents show that UWM voluntarily paid "certain Plan accounting and administrative fees." *See, e.g.*, Mathews Decl., Ex. B, 2021 Form 5500, Auditor's Notes at 13.  While not dispositive of any claim, UWM's voluntary payment of a portion of the administrative expenses underscores that Defendants did not indiscriminately charge expenses to the Plan participants' accounts.

In addition, the Plan Document describes in Section 11.09 that:

> Any forfeitures occurring during a Plan Year **may be used** *t*o pay administrative expenses under the Plan at any time, *if so directed by the Administrator*. Except as provided otherwise in the Adoption Agreement, any forfeitures not used to pay administrative expenses under the Plan **shall be applied** *to* reduce the contribution of the Employer for the immediately following Plan year and held and applied in accordance with this Section 11.09."

*Id.* at Section 11.09 (emphasis added); *see also* PageID.8 (¶ 45). In using the permissive phrase "may be used," Section 11.09 permits, but does not require, forfeitures to be used to pay administrative expenses.

## LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6)when it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must "contain either direct or inferential allegations respecting all material elements" of the plaintiff's claims, *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal quotation marks omitted), and must "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 463–64 (6th Cir. 2014) (citing *Twombly* at 570). Finally, although the Court should construe the facts alleged in the light most favorable to the plaintiff, the Court "need not, however, accept as true legal

5

conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

## ARGUMENT

### I.   Plaintiffs' First and Second Claims for Breach of Fiduciary Duty Fail as a Matter of Law.

In their First Claim, Plaintiffs allege that the Committee breached ERISA's "duty of loyalty," which requires fiduciaries of an employee benefit plan to discharge their duties "solely in the interest of the participants and beneficiaries" and also to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §§ 1104(a)(1) and (a)(1)(A).

In their Second Claim, Plaintiffs allege that the Committee breached ERISA's "duty of prudence," which requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Both breach of fiduciary duty claims rest on allegations that the Committee should have utilized forfeitures "to reduce and eliminate the administrative expenses charged to [plan participants] individual accounts." PageID.2 (¶ 4), 17 (¶ 97), 18 (¶ 105). The claims fail for three independent reasons:

(1) the claims conflict with and seek to upend 60 years of guidance issued by the federal legislators and regulators.

(2) the claims improperly extend ERISA beyond its bounds of protecting only the substantive benefits granted under the express terms of the Plan Document.

(3) the claims are otherwise implausible.

## A.   Plaintiffs' theory of liability is contrary to sixty years of regulatory guidance.

Since the 1960s, the United States Department of the Treasury has permitted forfeitures in pension plans to "…be used as soon as possible to reduce the employer's contributions under the plan." 26 C.F.R. § 1.401-7(a) (first promulgated in 1963). *See also* Rev. Ruling 67-68, 1967-1 C.B. 86 (concluding that pension plans that use forfeitures to reduce employer contributions comply with Section 401(a)(8) of the Internal Revenue Code of 1954). Other regulations and guidance issued by the Treasury Department in the 1970s confirmed that forfeitures can be used to reduce future employer contributions. *See* Rev. Ruling 71-313, 1971-2 C.B. 203 (1971) (holding that profit-sharing and stock bonus plans "may provide that forfeitures be used to reduce employer contributions that otherwise would be required under the contribution formula contained in the plan.").

In passing the Tax Reform Act of 1986, Public Law 99-514, Congress also described three potential ways forfeitures could be used in 401(k) and other types of "defined contribution" plans — (1) to reduce employer contributions, (2) to offset

administrative expenses, and (3) to reallocate among remaining participants.  H.R. Rept. No. 99-841, at Vol. II-442 (1986).[5]  The Conference Report accompanying the Tax Reform Act of 1986 highlighted that the use of forfeitures in 401(k) plans to "reduce future employer contributions" predated the enactment of that law.  *Id.* Through the Tax Reform Act, Congress could have required that one of the three alternative uses take priority over the other two, but it did not do so.

More recent regulations and guidance issued by the Treasury Department further confirmed that forfeitures can be used to reduce future employer contributions.  *See* 83 Fed. Reg. 34469, 34470 (July 20, 2018) (expressly "permit[ting] forfeitures of prior contributions to be used to fund" qualified matching contributions and qualified non-elective contributions).  And, in 2023, the Treasury Department issued a proposed regulation that identified the same three potential uses for forfeitures that Congress identified nearly 40 years earlier and sought to establish a deadline by which forfeitures must be used in a 401(k) plan. *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282-01 at 12884 (Feb. 27, 2023).[6]

---

[5]  A copy of pertinent section of H.R. Rept. No. 99-841 (1986) is included with the courtesy copies of materials that are concurrently being submitted to the Court.

[6]  A copy of the proposed regulation, *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282-01 (Feb. 27, 2023) is also included within the courtesy copies of materials.

Plaintiffs claim that, notwithstanding the longstanding legislative and regulatory guidance, it was somehow wrong to use forfeitures to reduce future Employer Contributions rather than pay administrative expenses. Reduced to its core, Plaintiffs' Complaint argues that using forfeitures to pay administrative expenses always must be prioritized over their use as future Employer Contributions.

There is no support in the law for the priority Plaintiffs seek. None of the provisions of ERISA cited in the Complaint specifically address forfeitures, much less prohibit using forfeitures to reduce employer contributions. And, as recently as 2023, the Treasury Department could have established through the proposed regulations a priority among the three alternative uses for forfeitures, but it did not. *See Use of Forfeitures in Qualified Retirement Plans,* 88 Fed. Reg. 12283 (Feb. 27, 2023). The Court should not recognize new substantive requirements regarding the use of forfeitures in 401(k) plans that neither Congress nor the Treasury Department chose to adopt. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (explaining that a statute's silence on an issue should be construed "as exactly that: silence.").

In dismissing substantially similar claims, the United States District Court for the Northern District of California in *Hutchins II* held that "[p]laintiff's theory is implausible in light of the long history of using forfeitures to reduce employer contributions." 767 F. Supp. 3d at 923 (concluding that the Treasury Department's

regulations "help[] to illustrate the difficulty with Plaintiff's theory"). Similarly, the United States District Court of Arizona in *Knight-Swift* recently concluded that "[t]o find that Defendant's decision to use forfeited assets to reduce its own contributions . . . violates [Defendant's] duties of loyalty or prudence would contravene decades of federal regulations suggesting that such a decision is entirely permissible." *Knight-Swift*, 2025 WL 1248922, at *4. Other district courts across the country have dismissed substantially similar claims and agreed with the rationale from *Hutchins II* and *Knight-Swift*. *See also Hutchins v. HP Inc.,* 737 F. Supp. 3d 851, 864 (dismissing claims that seek to "abrogate Treasury regulations and settled rules regarding the use of forfeitures in defined contribution plans"*) ("Hutchins I")*; *Bozzini*, No. 22-cv-05667-AMO, Dkt. No. 123 at 3 (N.D. Cal. May 29, 2025) (slip opinion) (same); *Wright*, No. 2:25-CV-00525, Dkt. No. 42 at 10 (C.D. Cal. June 13, 2025) (slip opinion) (dismissing claims "[b]ecause Plaintiff's theory of liability would contravene decades of federal regulations suggesting that using forfeitures to reduce employer contributions is entirely permissible."); *Dimou*, 2024 WL 4508450, at *9 (dismissing substantially similar claims and citing *Hutchins I*).

Therefore, the First and Second Claims in the Complaint should be dismissed.

**B.** **Plaintiffs' breach of fiduciary duty claims improperly extend ERISA beyond its bounds of protecting only the substantive benefits granted under the express terms of the Plan Document.**

ERISA requires a fiduciary discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D). By Plaintiffs' own admission, the UWM Plan Document does not require forfeitures first be used to pay administrative expenses, but rather it identifies using forfeitures to pay administrative expenses as one of the permitted options. PageID. 8-11, 17 (¶¶ 44, 46, 48, 50, 52, 54, 56, 58, 60, 97); *see also* Mathews Decl., Ex. A, Plan Document at Section 11.09 (describing that "forfeitures occurring during a Plan Year *may be used* to pay administrative expenses...") (emphasis added).

In contrast to the permissive phrase "may be used", the Plan Document mandates that "forfeitures not used to pay administrative expenses under the Plan **shall** be applied to reduce the contributions of the Employer for the immediately following Plan Year[.]" *Id.* at Section 11.09 (emphasis added). *See Hewitt v. Helms*, 459 U.S. 460, 471 (1983) ("shall," "will," and "must" are words of "an unmistakably mandatory character"); *Hicks v. Miranda*, 422 U.S. 332, 352 (1975) (Burger, C.J., concurring) ("It is well settled that 'shall' means 'must.'").

11

As such, UWM chose to use two different terms when drafting the Plan Document – a permissive term and a mandatory term.  Had UWM wanted *to require* forfeitures to be used to pay Plan administrative expenses, as Plaintiffs posit, it would not have used the permissive phrase "may be used", but instead would have prescribed that forfeitures "shall be used" to pay such expenses.  In other words, Plaintiffs' claims impermissibly seek to mandate the use of forfeitures to pay administrative expenses, contrary to the permissive language in the Plan Document.

In this regard, Plaintiffs are claiming that Plan participants are entitled to greater benefits than due to them under the express terms of the Plan Document.  This is not the law.  "While ERISA provides that a fiduciary must act 'for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries[,]' ERISA does no more than protect the benefits which are due to an employee under a plan."  *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) (quoting 29 U.S.C. §1104(a)(1)(A)); *see also Bennet*, 168 F.3d at 677 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445–47 (1999)) ("ERISA does not confer substantive rights on employees; rather it ensures that they will receive those benefits that the employers have guaranteed to them."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants" by paying plan expenses).

The courts have properly rejected Plaintiffs' theory that ERISA fiduciaries should prioritize using forfeitures to pay administrative expenses when the Plan Document does not mandate such use. *See Naylor*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (rejecting argument that ERISA require fiduciaries to, "contrary to the terms of the Plan, prioritize the use of forfeitures for, *inter alia*, the payment of administrative costs or a windfall to Plan participants") (citing cases); *Hutchins I*, 737 F. Supp. 3d at 863 (rejecting argument that ERISA's duties of prudence and loyalty somehow "create an entitlement to administrative costs" and concluding that "it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits."); *Dimou*, 2024 WL 4508450, at *8-9 (same); *Wright*, No. 2:25-CV-00525, Dkt. No. 42 at 9-10 (C.D. Cal. June 13, 2025) (slip opinion) (same).

Attempting to circumvent the terms of the controlling Plan Document, Plaintiffs allege that Plan's November 2023 Summary Plan Description ("2023 SPD"). . . stat[es] . . . that payment of Plan administrative expenses should be considered first."   (PageID.8 (¶ 47).   But, in that same paragraph, Plaintiffs acknowledge that the 2023 SPD simply tracks Section 11.09's permissive language that forfeitures "may" be used to pay administrative expenses. *Id.* The SPD does not require the Committee to use forfeitures to pay administrative expenses.

Plaintiffs also allege that the auditor's reports attached to the Plan's Form 5500s state that "forfeited non-vested accounts . . . will be used to pay future Plan

13

expenses."  (PageID.9-10 ((¶¶ 49, 51, 53, 55, 57)).  It is well settled that the Plan Document, not a Form 5500, establishes the rights and benefits of plan participants under ERISA, and, to the extent there are any conflict with other documents, the Plan document controls.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011); *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 425 (6th Cir. 2014) ("recogniz[ing] the superiority of the written plan documents" (citing *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir.1997))).  And, in *Knight-Swift*, the court rejected the same argument based on Form 5500 auditor's reports, concluding that "[t]he Form [5500] does not govern Plaintiffs' rights and [Defendant's] obligations, the Plan document does."  2025 WL 1248922, at *5. Accordingly, neither the SPD nor the Form 5500s save Claims One and Two from dismissal.

### C.     The Breach of Fiduciary Duty Claims are Otherwise Implausible.

Plaintiffs' breach of fiduciary duty claims also are implausible because they would require plan fiduciaries to always use forfeitures to pay plan administrative expenses.  As the *Hutchins I* court explained:

> [T]he flaw in [Plaintiff's] theory is that it is not limited to any particular circumstances that may be present in this case. The Supreme Court has emphasized that "the content of the duty of prudence turns on 'the circumstances ... prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *See Dudenhoeffer*, 573 U.S. at 425, 134 S.Ct. 2459, (2014) (internal citation omitted) (quoting 29 U.S.C. § 1104(a)(1)(B)). . . . Plaintiff's theory is in tension with the Supreme Court's analysis in *Dudenhoeffer*, which

emphasizes that the plausibility of allegations of breach of fiduciary duty should consider the context and circumstances of the fiduciary's actions. As pled, Plaintiff's theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances. This broad allegation is implausible because it would improperly extend ERISA beyond its bounds and would be contrary the settled understanding of Congress and the Treasury Department regarding defined contribution plans like the one at issue in this case.

737 F. Supp. 3d at 862-863.

The *Hutchins II* court dismissed claims based on substantially similar allegations to the ones here and concluded that those "facts as alleged do not invite a plausible inference of wrongdoing on [defendant's] part[]" and the plaintiff could not "allege that [p]laintiff or any other Plan participant did not receive the benefits to which he was entitled under the Plan." 767 F. Supp. 3d at 927. Other courts have similarly found implausible and dismissed breach of fiduciary duty claims that would require plan fiduciaries - regardless of the circumstances - to use forfeitures to pay administrative costs. *See Knight-Swift*, 2025 WL 1248922, at *4 (under plaintiff's theory, a "fiduciary would always be required to choose to pay administrative costs."); *Barragan*, 2024 WL 5165330, at *5 (plaintiff's "broad theory would 'require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances.'"); *Dimou*, 2024 WL 4508450, at *9 (plaintiff's claims are "too broad to be plausible."); *Bozzini*, No. 22-cv-05667-AMO, Dkt. No. 123 at 3 (N.D. Cal. May 29, 2025) (slip opinion) ("[m]ore

is required to state a viable claim" than alleging that defendants violated their duty "[b]y exercising discretion to direct forfeited funds only for the [p]lan's benefit rather than the benefit of [p]lan participants[]"); *Wright*, No. 2:25-CV-00525, Dkt. No. 42 at 9 (C.D. Cal. June 13, 2025) (slip opinion) (rejecting theory that an ERISA plan fiduciary is required to choose to pay administrative costs using forfeitures because it "runs contrary to the Supreme Courts instruction that the plausibility of allegations of breach of fiduciary duty is a 'context specific' inquiry dependent on the particular circumstances at issue").

Plaintiffs' allegations are no different than those which other courts found insufficient. As in the other cases, "all Plan participants received their promised benefits" and Plaintiffs are "unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures." *Hutchins II,* 767 F. Supp. 3d at 927. As such, Plaintiffs' First and Second Claims should be dismissed.

## II. Plaintiffs' Third and Fourth Claims Alleging Prohibited Transactions Should Be Dismissed Because the Complaint Does Not Identify a "Transaction" Covered by the Statute .

In the Third Claim, Plaintiffs allege that the Committee violated 29 U.S.C. § 1106(b), which is titled "Transactions Between Plan and Fiduciary" and states that a plan fiduciary "shall not deal with the assets of the plan in his own interest or for his own account." In support of this claim, Plaintiffs reference the Committee

"allocating [forfeitures] toward offsetting UWM's future contributions owing to the Plan."  Page ID.19 (¶110).

In the Fourth Claim, Plaintiffs allege that the Committee violated 29 U.S.C. § 1106(a)(1)(D), which is titled "Transactions Between Plan and a Party in Interest" and provides that a fiduciary "shall not cause a plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect …transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."  As support, Plaintiffs again reference the Committee "using Plan forfeitures to reduce the future employer contributions of UWM."  PageID.19 (¶115).

By their express terms, both ERISA provisions require Plaintiffs to identify in their Complaint a "transaction" within the meaning of the statute.  In *Lockheed*, the Supreme Court rationally concluded that ERISA's prohibited transaction provisions were not designed to target the lawful use of plan assets, such as the payment of benefits, but rather target "commercial bargains that present a special risk of plan underfunding."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996).  The Supreme Court also emphasized that the prohibited transaction rules apply to "uses of plan assets that are potentially harmful to the plan."  *Id.*  *See also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (dismissing claims because the defendants' decision "to continue to hold 15% of Plan assets in employer

stock was not a 'transaction,'" but "merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms").

Reallocating forfeitures to other Plan participants as part of future Employer Contributions is not commercial activity that raises a risk of Plan underfunding. To the contrary, allocating forfeitures helps to ensure that the Plan remains fully funded.

Nor does allocating forfeitures to other participants as future Employer Contributions otherwise qualify as a "transaction" for purposes of 29 U.S.C. § 1106. In dismissing nearly identical prohibited transaction claims, the *Hutchins I* court determined that the allegations showed that the "forfeited amounts remain[ed] Plan assets" and were "merely reallocated to provide pension benefits to other employees through use as matching contributions."   2024 WL 3049456, at *9.  The court concluded "[t]he fact that reallocation of the forfeited amounts [would] reduce the amount that [an employer] contributes as matching contributions" did not make a transaction prohibited for purposes of Section 1106.  *Id.*  Similarly, the *Dimou* court concluded that that an "intra-plan allocation of assets" is not a "transaction" for purposes of ERISA.  *Dimou*, 2024 WL 4508450, at *11.

Other courts across the country have ruled consistent with *Hutchins* and *Dimou*.  *See Barragan*, 2024 WL 5165330, at *7 (dismissing prohibited transaction claims where "the allegations demonstrate that the forfeited amounts remain as Plan assets and are reallocated to other Plan participants" and there were no allegations

18

"indicating the reallocation of the forfeited amounts exposed the Plan to 'a special risk of plan underfunding.'"); *Knight-Swift*, 2025 WL 1248922, at *5-6 (same); *Madrigal v. Kaiser Foundation Health Plan, Inc.*, No. 2:24-cv-5191, 2025 WL 1299002 at *6-7 (C.D. Cal. May 2, 2025) (same); *Bozzini*, No. 22-cv-05667-AMO, Dkt. No. 123 at 3-4 (N.D. Cal. May 29, 2025) (slip opinion) (same); *Steen*, No. 4:24-cv-03105-JD, Dkt. No. 38 at 15 (D.S.C. June 4, 2025) (slip opinion) (same); *Wright*, No. 2:25-CV-00525, Dkt. No. 42 at 12-13 (C.D. Cal. June 13, 2025) (slip opinion) (same); *see also Chao v. Hagemeyer N. Am., Inc.*, No. CV 06-01173-PMD, 2006 WL 8443663, at *6 (D.S.C. Oct. 20, 2006) (holding that "exchanges or 'reallocations' between accounts of plan participants" are not prohibited transactions when they constitute "a redistribution within the plan of the plan assets").

Finally, the prohibited transaction claims should be dismissed because Plaintiffs are effectively challenging UWM's decision to design the Plan to allow forfeitures to be used to reduce future Employer Contributions.  Prescribing in the Plan Document how forfeitures may be used is a "settlor" act, not a fiduciary act on which liability under Section 406(a)(1) or (b)(1) can be predicated.  *See Lockheed*, 517 U.S. at 891 ("Lockheed acted not as a fiduciary but as a settlor when it amended the terms of the Plan to include the retirement programs.  Thus, §406(a)'s requirement of fiduciary status is not met.").  Accordingly, Plaintiffs' prohibited transaction claims should be dismissed.

### III. Plaintiffs' Fifth Claim Fails to State a Plausible Claim for Breach of the Duty to Monitor.

Plaintiffs' duty to monitor claim against UWM should be dismissed because it is derivative of their underlying claims, which fail for the reasons discussed above. *Saumer v. Cliffs Nat. Res. Inc.,* No. 1:15-CV-954-DAP, 2016 WL 8668509, at *8 (N.D. Ohio Apr. 1, 2016), *aff'd*, 853 F.3d 855 (6th Cir. 2017) (describing that "a failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

Dated: June 17, 2025        Respectfully submitted,

**GROOM LAW GROUP, CHARTERED**

*/s/ Michael J. Prame*
Michael J. Prame
Andrew Salek-Raham
Hannah M. Stephens
Chidera F. Onyeoziri
1701 Pennsylvania Ave., NW
Washington, D.C. 20006
Tel: 202-857-0620
Fax: 202-659-4503
mprame@groom.com
asalek-raham@groom.com
hstephens@groom.com
conyeoziri@groom.com

**BUSH SEYFERTH PLLC**

*/s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Thomas G. Cribbins (P86891)
100 West Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (282) 822-7807
murray@bsplaw.com
mcdonald@bsplaw.com
cribbins@bsplaw.com

*Attorneys for Defendants United Wholesale
Mortgage, LLC and United Wholesale
Mortgage, LLC 401(k) Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2025, a true and correct copy of the foregoing

document was sent to all counsel of record via the CM/ECF system.

<u>/s/ *Michael J. Prame*</u>
Michael J. Prame
*Counsel for Defendants*