# EXHIBIT A

# PRE-APPROVED DEFINED CONTRIBUTION PLAN

# FIDELITY BASIC PLAN DOCUMENT NO. 17

*FMR LLC and its affiliates do not provide tax or legal advice. Nothing herein or in any attachments hereto should be construed, or relied upon, as tax or legal advice.*

*IRS CIRCULAR 230 DISCLOSURE:  To the extent this document (including attachments), mentions or references any tax matter, it is not intended or written to be used, and cannot be used by the recipient or any other person, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party the matter addressed herein.  Please consult an independent tax advisor for advice on your particular circumstances.*

© 2020 FMR LLC
All rights reserved.

# PRE-APPROVED
# DEFINED CONTRIBUTION PLAN

**PREAMBLE**. 1

**ARTICLE 1.   ADOPTION AGREEMENT**. ...................................................................................................... 1

**ARTICLE 2.   DEFINITIONS**. .................................................................................................................... 1
   2.01.   DEFINITIONS. ........................................................................................................................ 1
   2.02.   INTERPRETATION AND CONSTRUCTION OF TERMS. ................................................................ 11
   2.03.   SPECIAL EFFECTIVE DATES. ................................................................................................. 11

**ARTICLE 3.   SERVICE**. ........................................................................................................................ 11
   3.01.   CREDITING OF ELIGIBILITY SERVICE. .................................................................................... 11
   3.02.   RE-CREDITING OF ELIGIBILITY SERVICE FOLLOWING TERMINATION OF EMPLOYMENT. ........... 12
   3.03.   CREDITING OF VESTING SERVICE. ........................................................................................ 12
   3.04.   APPLICATION OF VESTING SERVICE TO A PARTICIPANT'S ACCOUNT FOLLOWING A BREAK IN VESTING SERVICE. ............................................................................................................... 12
   3.05.   SERVICE WITH PREDECESSOR EMPLOYER. ............................................................................ 12
   3.06.   CHANGE IN SERVICE CREDITING ......................................................................................... 12

**ARTICLE 4.   PARTICIPATION**. ............................................................................................................... 12
   4.01.   DATE OF PARTICIPATION. ..................................................................................................... 12
   4.02.   TRANSFERS OUT OF COVERED EMPLOYMENT. ....................................................................... 13
   4.03.   TRANSFERS INTO COVERED EMPLOYMENT. .......................................................................... 13
   4.04.   RESUMPTION OF PARTICIPATION FOLLOWING REEMPLOYMENT. ........................................... 13

**ARTICLE 5.   CONTRIBUTIONS**. .............................................................................................................. 13
   5.01.   CONTRIBUTIONS SUBJECT TO LIMITATIONS. ......................................................................... 13
   5.02.   COMPENSATION TAKEN INTO ACCOUNT IN DETERMINING CONTRIBUTIONS. .......................... 13
   5.03.   DEFERRAL CONTRIBUTIONS. ................................................................................................ 13
   5.04.   EMPLOYEE CONTRIBUTIONS. ............................................................................................... 15
   5.05.   NO DEDUCTIBLE EMPLOYEE CONTRIBUTIONS. ..................................................................... 15
   5.06.   ROLLOVER CONTRIBUTIONS. ............................................................................................... 16
   5.07.   QUALIFIED NONELECTIVE EMPLOYER CONTRIBUTIONS. ....................................................... 17
   5.08.   MATCHING EMPLOYER CONTRIBUTIONS. ............................................................................. 17
   5.09.   QUALIFIED MATCHING EMPLOYER CONTRIBUTIONS. ............................................................ 18
   5.10.   NONELECTIVE EMPLOYER CONTRIBUTIONS. ......................................................................... 18
   5.11.   VESTED INTEREST IN CONTRIBUTIONS. ................................................................................. 19
   5.12.   TIME FOR MAKING CONTRIBUTIONS. ................................................................................... 19
   5.13.   EXCLUSIVE BENEFIT AND RETURN OF EMPLOYER CONTRIBUTIONS. ..................................... 20
   5.14.   FROZEN PLAN. ..................................................................................................................... 20

**ARTICLE 6.   LIMITATIONS ON CONTRIBUTIONS**. ................................................................................... 20
   6.01.   SPECIAL DEFINITIONS. ......................................................................................................... 20
   6.02.   CODE SECTION 402(G) LIMIT ON DEFERRAL CONTRIBUTIONS. .............................................. 26
   6.03.   ADDITIONAL LIMIT ON DEFERRAL CONTRIBUTIONS ("ADP" TEST). ...................................... 26
   6.04.   ALLOCATION AND DISTRIBUTION OF "EXCESS CONTRIBUTIONS". ......................................... 27
   6.05.   REDUCTIONS IN DEFERRAL OR EMPLOYEE CONTRIBUTIONS TO MEET CODE REQUIREMENTS. .. 28
   6.06.   LIMIT ON MATCHING EMPLOYER CONTRIBUTIONS AND EMPLOYEE CONTRIBUTIONS ("ACP" TEST). ..... 28
   6.07.   ALLOCATION, DISTRIBUTION, AND FORFEITURE OF "EXCESS AGGREGATE CONTRIBUTIONS". .. 29

© 2020 FMR LLC
All rights reserved.
i

| | | |
|---|---|---:|
| 6.08. | INCOME OR LOSS ON DISTRIBUTABLE CONTRIBUTIONS. | 29 |
| 6.09. | DEEMED SATISFACTION OF "ADP" TEST. | 30 |
| 6.10. | DEEMED SATISFACTION OF "ACP" TEST WITH RESPECT TO MATCHING EMPLOYER CONTRIBUTIONS. | 31 |
| 6.11. | CHANGING TESTING METHODS | 32 |
| 6.12. | CODE SECTION 415 LIMITATIONS. | 33 |

**ARTICLE 7.   PARTICIPANTS' ACCOUNTS. ...................................................................................34**

| | | |
|---|---|---:|
| 7.01. | INDIVIDUAL ACCOUNTS. | 34 |
| 7.02. | VALUATION OF ACCOUNTS. | 35 |

**ARTICLE 8.   INVESTMENT OF CONTRIBUTIONS. ........................................................................35**

| | | |
|---|---|---:|
| 8.01. | MANNER OF INVESTMENT. | 35 |
| 8.02. | INVESTMENT DECISIONS. | 35 |
| 8.03. | PARTICIPANT DIRECTIONS TO TRUSTEE. | 36 |
| 8.04. | LIFE INSURANCE. | 36 |

**ARTICLE 9.   PARTICIPANT LOANS. .............................................................................................36**

| | | |
|---|---|---:|
| 9.01. | SPECIAL DEFINITION. | 36 |
| 9.02. | PARTICIPANT LOANS. | 37 |
| 9.03. | SEPARATE LOAN PROCEDURES. | 37 |
| 9.04. | AVAILABILITY OF LOANS. | 37 |
| 9.05. | LIMITATION ON LOAN AMOUNT. | 37 |
| 9.06. | INTEREST RATE. | 37 |
| 9.07. | LEVEL AMORTIZATION. | 37 |
| 9.08. | SECURITY. | 37 |
| 9.09. | LOAN REPAYMENTS. | 37 |
| 9.10. | DEFAULT. | 37 |
| 9.11. | EFFECT OF TERMINATION WHERE PARTICIPANT HAS OUTSTANDING LOAN BALANCE. | 38 |
| 9.12. | DEEMED DISTRIBUTIONS UNDER CODE SECTION 72(P). | 38 |
| 9.13. | DETERMINATION OF VESTED INTEREST UPON DISTRIBUTION WHERE PLAN LOAN IS OUTSTANDING. | 38 |

**ARTICLE 10.   IN-SERVICE WITHDRAWALS. .................................................................................38**

| | | |
|---|---|---:|
| 10.01. | AVAILABILITY OF IN-SERVICE WITHDRAWALS. | 38 |
| 10.02. | WITHDRAWAL OF EMPLOYEE CONTRIBUTIONS. | 39 |
| 10.03. | WITHDRAWAL OF ROLLOVER CONTRIBUTIONS. | 39 |
| 10.04. | AGE 59 1/2 WITHDRAWALS. | 39 |
| 10.05. | HARDSHIP WITHDRAWALS. | 39 |
| 10.06. | ADDITIONAL IN-SERVICE WITHDRAWAL RULES. | 40 |
| 10.07. | RESTRICTIONS ON IN-SERVICE WITHDRAWALS. | 40 |
| 10.08. | QUALIFIED RESERVIST DISTRIBUTIONS. | 40 |
| 10.09. | AGE 62 DISTRIBUTION OF MONEY PURCHASE BENEFITS. | 41 |

**ARTICLE 11.   RIGHT TO BENEFITS. .............................................................................................41**

| | | |
|---|---|---:|
| 11.01. | NORMAL OR EARLY RETIREMENT. | 41 |
| 11.02. | LATE RETIREMENT. | 41 |
| 11.03. | DISABILITY RETIREMENT. | 41 |
| 11.04. | DEATH. | 41 |
| 11.05. | OTHER TERMINATION OF EMPLOYMENT. | 42 |
| 11.06. | APPLICATION FOR DISTRIBUTION. | 42 |
| 11.07. | APPLICATION OF VESTING SCHEDULE FOLLOWING PARTIAL DISTRIBUTION. | 42 |
| 11.08. | FORFEITURES. | 42 |
| 11.09. | APPLICATION OF FORFEITURES. | 42 |
| 11.10. | REINSTATEMENT OF FORFEITURES. | 43 |

© 2020 FMR LLC
All rights reserved.

| | | |
|---|---|---|
| **11.11.** | **ADJUSTMENT FOR INVESTMENT EXPERIENCE.** | 43 |
| **ARTICLE 12. DISTRIBUTIONS.** | | **43** |
| 12.01. | RESTRICTIONS ON DISTRIBUTIONS. | 43 |
| 12.02. | TIMING OF DISTRIBUTION FOLLOWING RETIREMENT OR TERMINATION OF EMPLOYMENT. | 44 |
| 12.03. | PARTICIPANT CONSENT TO DISTRIBUTION. | 44 |
| 12.04. | REQUIRED COMMENCEMENT OF DISTRIBUTION TO PARTICIPANTS. | 44 |
| 12.05. | REQUIRED COMMENCEMENT OF DISTRIBUTION TO BENEFICIARIES. | 45 |
| 12.06. | WHEREABOUTS OF PARTICIPANTS AND BENEFICIARIES. | 46 |
| **ARTICLE 13. FORM OF DISTRIBUTION.** | | **46** |
| 13.01. | NORMAL FORM OF DISTRIBUTION UNDER PROFIT SHARING PLAN. | 46 |
| 13.02. | CASH OUT OF SMALL ACCOUNTS. | 46 |
| 13.03. | MINIMUM DISTRIBUTIONS. | 46 |
| 13.04. | DIRECT ROLLOVERS. | 49 |
| 13.05. | NOTICE REGARDING TIMING AND FORM OF DISTRIBUTION. | 50 |
| 13.06. | DETERMINATION OF METHOD OF DISTRIBUTION. | 50 |
| 13.07. | NOTICE TO TRUSTEE. | 51 |
| **ARTICLE 14. SUPERSEDING ANNUITY DISTRIBUTION PROVISIONS.** | | **51** |
| 14.01. | SPECIAL DEFINITIONS. | 51 |
| 14.02. | APPLICABILITY. | 51 |
| 14.03. | ANNUITY FORM OF PAYMENT. | 51 |
| 14.04. | "QUALIFIED JOINT AND SURVIVOR ANNUITY" AND "QUALIFIED PRERETIREMENT SURVIVOR ANNUITY" REQUIREMENTS. | 52 |
| 14.05. | WAIVER OF THE "QUALIFIED JOINT AND SURVIVOR ANNUITY" AND/OR "QUALIFIED PRERETIREMENT SURVIVOR ANNUITY" RIGHTS. | 52 |
| 14.06. | SPOUSE'S CONSENT TO WAIVER. | 53 |
| 14.07. | NOTICE REGARDING "QUALIFIED JOINT AND SURVIVOR ANNUITY". | 53 |
| 14.08. | NOTICE REGARDING "QUALIFIED PRERETIREMENT SURVIVOR ANNUITY". | 53 |
| 14.09. | FORMER SPOUSE. | 53 |
| **ARTICLE 15. TOP-HEAVY PROVISIONS.** | | **54** |
| 15.01. | DEFINITIONS. | 54 |
| 15.02. | APPLICATION. | 55 |
| 15.03. | MINIMUM CONTRIBUTION. | 55 |
| 15.04. | DETERMINATION OF MINIMUM REQUIRED CONTRIBUTION. | 56 |
| 15.05. | ACCELERATED VESTING. | 56 |
| 15.06. | EXCLUSION OF COLLECTIVELY-BARGAINED EMPLOYEES. | 56 |
| **ARTICLE 16. AMENDMENT AND TERMINATION.** | | **56** |
| 16.01. | AMENDMENTS BY THE EMPLOYER THAT DO NOT AFFECT PRE-APPROVED STATUS. | 56 |
| 16.02. | AMENDMENTS BY THE EMPLOYER ADOPTING PROVISIONS NOT INCLUDED IN PRE-APPROVED PLAN, THROUGH THE PLAN SUPERSEDING PROVISIONS ADDENDUM. | 57 |
| 16.03. | AMENDMENT BY THE PRE-APPROVED PLAN PROVIDER. | 57 |
| 16.04. | AMENDMENTS AFFECTING VESTED INTEREST AND/OR ACCRUED BENEFITS. | 57 |
| 16.05. | RETROACTIVE AMENDMENTS MADE BY PRE-APPROVED PLAN PROVIDER. | 57 |
| 16.06. | TERMINATION AND DISCONTINUATION OF CONTRIBUTIONS. | 58 |
| 16.07. | DISTRIBUTION UPON TERMINATION OF THE PLAN. | 58 |
| 16.08. | MERGER OR CONSOLIDATION OF PLAN; TRANSFER OF PLAN ASSETS. | 58 |
| **ARTICLE 17. AMENDMENT AND CONTINUATION OF PRIOR PLAN; TRANSFER OF FUNDS TO OR FROM OTHER QUALIFIED PLANS.** | | **58** |

© 2020 FMR LLC
All rights reserved.

| | | |
|---|---|---|
| 17.01. | A<small>MENDMENT AND</small> C<small>ONTINUATION OF</small> P<small>RIOR</small> P<small>LAN</small>. | 58 |
| 17.02. | T<small>RANSFER OF</small> F<small>UNDS FROM AN</small> E<small>XISTING</small> P<small>LAN</small>. | 59 |
| 17.03. | T<small>RANSFER OF</small> A<small>SSETS FROM</small> T<small>RUST</small>. | 60 |

**ARTICLE 18. MISCELLANEOUS.** ........................................................................................................... **61**

| | | |
|---|---|---|
| 18.01. | C<small>OMMUNICATION TO</small> P<small>ARTICIPANTS</small>. | 61 |
| 18.02. | L<small>IMITATION OF</small> R<small>IGHTS</small>. | 61 |
| 18.03. | N<small>ONALIENABILITY OF</small> B<small>ENEFITS</small>. | 61 |
| 18.04. | Q<small>UALIFIED</small> D<small>OMESTIC</small> R<small>ELATIONS</small> O<small>RDERS</small> P<small>ROCEDURES</small>. | 61 |
| 18.05. | A<small>PPLICATION OF</small> P<small>LAN</small> P<small>ROVISIONS FOR</small> M<small>ULTIPLE</small> E<small>MPLOYER</small> P<small>LANS</small>. | 62 |
| 18.06. | V<small>ETERANS</small> R<small>EEMPLOYMENT</small> R<small>IGHTS</small>. | 62 |
| 18.07. | F<small>ACILITY OF</small> P<small>AYMENT</small>. | 62 |
| 18.08. | I<small>NFORMATION BETWEEN</small> E<small>MPLOYER AND/OR</small> A<small>DMINISTRATOR AND</small> T<small>RUSTEE</small>. | 62 |
| 18.09. | E<small>FFECT OF</small> F<small>AILURE TO</small> Q<small>UALIFY</small> U<small>NDER</small> C<small>ODE</small>. | 63 |
| 18.10. | D<small>IRECTIONS</small>, N<small>OTICES AND</small> D<small>ISCLOSURE</small>. | 63 |
| 18.11. | G<small>OVERNING</small> L<small>AW</small>. | 63 |
| 18.12. | D<small>ISCHARGE OF</small> D<small>UTIES BY</small> F<small>IDUCIARIES</small>. | 63 |

**ARTICLE 19. PLAN ADMINISTRATION.** ................................................................................................ **63**

| | | |
|---|---|---|
| 19.01. | P<small>OWERS AND</small> R<small>ESPONSIBILITIES OF THE</small> A<small>DMINISTRATOR</small>. | 63 |
| 19.02. | N<small>ONDISCRIMINATORY</small> E<small>XERCISE OF</small> A<small>UTHORITY</small>. | 63 |
| 19.03. | C<small>LAIMS AND</small> R<small>EVIEW</small> P<small>ROCEDURES</small>. | 63 |
| 19.04. | N<small>AMED</small> F<small>IDUCIARY</small>. | 64 |
| 19.05. | C<small>OSTS OF</small> A<small>DMINISTRATION</small>. | 64 |

**ADDENDUM RE: THE BIPARTISAN BUDGET ACT OF 2018, AND CODE SECTIONS 401(K) AND 401(M) 2019 FINAL HARDSHIP REGULATIONS**........................................................................................... **65**

© 2020 FMR LLC
All rights reserved.

iv

Preamble.

This Pre-Approved Plan consists of two parts: (1) an Adoption Agreement that is a separate document incorporated by reference into this Basic Plan Document; and (2) this Basic Plan Document. Each part of the Pre-Approved Plan contains substantive provisions that are integral to the operation of the plan. The Adoption Agreement is the means by which an adopting Employer elects the optional provisions that shall apply under its plan. The Basic Plan Document describes the standard provisions elected in the Adoption Agreement. The Pre-Approved Plan is intended to qualify under Code Section 401(a). Depending upon the Adoption Agreement completed by an adopting Employer, the Pre-Approved Plan may be used to implement a profit sharing plan with or without a cash or deferred arrangement intended to qualify under Code Section 401(k). To the extent the Employer selects provisions available to it through an Addendum to the Adoption Agreement, such Addendum will be included with the Plan's Adoption Agreement and the provisions in such Addendum will supplement or alter provisions appearing in the Adoption Agreement in the manner described within that Addendum. Provisions appearing on the Plan Superseding Provisions Addendum of the Adoption Agreement, if present, supersede any conflicting provisions appearing in the Adoption Agreement, Basic Plan Document or any addendum to either in the manner described therein.

Article 1.    Adoption Agreement.

Article 2.    Definitions.

**2.01.    Definitions.**

Wherever used herein, the following terms have the meanings set forth below, unless a different meaning is clearly required by the context:

(a)    **"Account"** means an account established for the purpose of recording any contributions made on behalf of a Participant and any income, expenses, gains, or losses incurred thereon. The Administrator shall establish and maintain sub-accounts within a Participant's Account as necessary to depict accurately a Participant's interest under the Plan.

(b)    **"Active Participant"** means any Eligible Employee who has met the requirements of Article 4 to participate in the Plan and who may be entitled to receive allocations under the Plan.

(c)    **"Administrator"** means the Employer adopting this Plan, as listed in Subsection 1.02(a) of the Adoption Agreement, or another person or entity designated by the Employer in Subsection 1.01(c) of the Adoption Agreement.

(d)    **"Adoption Agreement"** means Article 1, under which the Employer establishes and adopts, or amends the Plan and designates the optional provisions selected by the Employer. The provisions of the Adoption Agreement shall be an integral part of the Plan.

(e)    **"Annuity Starting Date"** means the first day of the first period for which an amount is payable as an annuity or in any other form permitted under the Plan.

(f)    **"Basic Plan Document"** means this Fidelity Pre-Approved Plan document, qualified with the Internal Revenue Service as Basic Plan Document No. 17.

(g)    **"Beneficiary"** means the person or persons (including a trust) entitled under Section 11.04 or 14.04 to receive benefits under the Plan upon the death of a Participant.

(h)    **"Break in Vesting Service"** means, unless provided otherwise in the Adoption Agreement, a 12-consecutive-month period beginning on an Employee's Severance Date or any anniversary thereof in which the Employee is not credited with an Hour of Service. Notwithstanding the foregoing, the following special rules apply in determining whether an Employee who is on leave has incurred a Break in Vesting Service:

(1)    If an individual is absent from work because of maternity/paternity leave on the first anniversary of his Severance Date, the 12-consecutive-month period beginning on the individual's Severance Date shall not constitute a Break in Vesting Service. For purposes of this paragraph, "maternity/paternity leave" means a leave of absence (i) by reason of the pregnancy of the individual, (ii) by reason of the birth of a

Pre-Approved Defined Contribution Plan – 06/30/2020                                                                       Basic Plan Document 17

© 2020 FMR LLC
All rights reserved.

179 days or for an indefinite period by reason of being a member of a reserve component (as defined in Section 101 of Title 37, United States Code), shall be eligible to elect to receive a Qualified Reservist Distribution.  A "Qualified Reservist Distribution" means a distribution from the Participant's Account of amounts attributable to Deferral Contributions, provided such distribution is made during the period beginning on the date of the order or call to active duty and ending at the close of the active duty period.

**10.09.   Age 62 Distribution of Money Purchase Benefits.**  If so elected by the Employer in Section 1.19(e) of the Adoption Agreement, a Participant who has attained at least age 62 shall be eligible to elect to receive a distribution of vested benefit amounts accrued as a result of the Participant's participation in a money purchase pension plan (due to a merger into this Plan of money purchase pension plan assets), if any.

Article 11.   Right to Benefits.

**11.01.   Normal or Early Retirement.**  Each Participant who continues in employment as an Employee until his Normal Retirement Age or, if so elected by the Employer in Subsection 1.14(b) of the Adoption Agreement, Early Retirement Age, shall have a vested interest in his Account of 100 percent regardless of any vesting schedule elected in Section 1.16 of the Adoption Agreement.  If a Participant retires upon the attainment of Normal or Early Retirement Age, such retirement is referred to as a normal retirement.

**11.02.   Late Retirement.**  If a Participant continues in employment as an Employee after his Normal Retirement Age, he shall continue to have a 100 percent vested interest in his Account and shall continue to participate in the Plan until the date he establishes with the Employer for his late retirement.  If so elected by the Employer in Section 1.19(f) of the Adoption Agreement, until he retires, he has a continuing right to elect to receive distribution of all or any portion of his Account in accordance with the provisions of Articles 12 and 13; provided, however, that a Participant may not receive any portion of his Deferral Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Employer Contributions, 401(k) Safe Harbor Matching Employer Contributions, or 401(k) Safe Harbor Nonelective Employer Contributions sub-accounts prior to his attainment of age 59 1/2.

**11.03.   Disability Retirement.**  If so elected by the Employer in Subsection 1.14(c) of the Adoption Agreement, a Participant who becomes disabled while employed as an Employee, or, unless provided otherwise in the Additional Provisions Addendum to the Adoption Agreement, while performing qualified military service as defined in Code Section 414(u)(5), shall have a 100 percent vested interest in his Account regardless of any vesting schedule elected in Section 1.16 of the Adoption Agreement.  An Employee is considered disabled if he satisfies any of the requirements for disability retirement selected by the Employer in Section 1.15 of the Adoption Agreement and terminates his employment with the Employer.  Such termination of employment is referred to as a disability retirement.

**11.04.   Death.**  A Participant who dies while employed as an Employee, or while performing qualified military service as defined in Code Section 414(u)(5), shall have a 100 percent vested interest in his Account and his designated Beneficiary shall be entitled to receive the balance of his Account, plus any amounts thereafter credited to his Account.  If a Participant whose employment as an Employee has terminated dies, his designated Beneficiary shall be entitled to receive the Participant's vested interest in his Account.

A copy of the death notice or other sufficient documentation must be provided to the Administrator using procedures established by the Administrator.  If upon the death of the Participant there is, in the opinion of the Administrator, no designated Beneficiary for part or all of the Participant's Account, such amount shall be paid to his surviving Spouse or, if none, to his estate (such Spouse or estate shall be deemed to be the Beneficiary for purposes of the Plan).  If a Beneficiary dies after benefits to such Beneficiary have commenced, but before they have been completed, and, in the opinion of the Administrator, no person has been designated to receive such remaining benefits, then such benefits shall be paid in a lump sum to the deceased Beneficiary's estate.

Subject to the requirements of Section 14.04, a Participant may designate a Beneficiary, or change any prior designation of Beneficiary by giving notice to the Administrator using procedures established by the Administrator.  If more than one person is designated as the Beneficiary, their respective interests shall be as indicated on the designation form.  In the case of a married Participant, the Participant's Spouse shall be deemed to be the designated Beneficiary unless the Participant's Spouse has consented to another designation in the manner described in Section 14.06.  Notwithstanding the foregoing, if a Participant's Account is subject to the requirements of Section 14.04 and the Employer has specified in Subsection 1.20(d)(2)(B)(ii) of the Adoption Agreement that less than 100 percent of the Participant's Account that is subject

© 2020 FMR LLC
All rights reserved.

to Section 14.04 shall be used to purchase the "qualified preretirement survivor annuity", as defined in Section 14.01, the Participant may designate a Beneficiary other than his Spouse for the portion of his Account that would not be used to purchase the "qualified preretirement survivor annuity," regardless of whether the Spouse consents to such designation.

**11.05.** **Other Termination of Employment.**  If a Participant terminates his employment with the Employer and all Related Employers, if any, for any reason other than death or normal, late, or disability retirement, he shall be entitled to a termination benefit equal to the sum of (a) his vested interest in the balance of his Matching Employer and/or Nonelective Employer Contributions sub-account(s), such vested interest to be determined in accordance with Section 5.11 and the vesting schedule(s) selected by the Employer in Section 1.16 of the Adoption Agreement and/or the Vesting Addendum to the Adoption Agreement, and (b) the balance of his Deferral, Employee, Qualified Nonelective Employer, Qualified Matching Employer, and Rollover Contributions sub-accounts.

**11.06.** **Application for Distribution.** Except as provided in Subsection 1.21(a) of the Adoption Agreement, a Participant (or his Beneficiary, if the Participant has died) who is entitled to a distribution hereunder must request such distribution, using procedures established by the Administrator, unless the Employer has elected in Subsection 1.20(e)(1) of the Adoption Agreement to cash out de minimus Accounts and the Participant's vested interest in his Account does not exceed the amount subject to automatic distribution pursuant to Section 13.02.

**11.07.** **Application of Vesting Schedule Following Partial Distribution.**  If a distribution from a Participant's Matching Employer and/or Nonelective Employer Contributions sub-account has been made to him at a time when his vested interest in such Account balance is less than 100 percent, the vesting schedule(s) in Section 1.16 of the Adoption Agreement shall thereafter apply only to the balance of his Account attributable to Matching Employer and/or Nonelective Employer Contributions allocated after such distribution.  The balance of the Account from which such distribution was made shall be transferred to a separate account immediately following such distribution.

At any relevant time prior to a forfeiture of any portion thereof under Section 11.08, a Participant's vested interest in such separate account shall be equal to $P(AB+(RxD))-(RxD)$, where P is the Participant's vested interest expressed as a percentage at the relevant time determined under Section 11.05; AB is the account balance of the separate account at the relevant time; D is the amount of the distribution; and R is the ratio of the account balance at the relevant time to the account balance after distribution.  Following a forfeiture of any portion of such separate account under Section 11.08 below, the Participant's vested interest in any balance in such separate account shall remain 100 percent.

**11.08.** **Forfeitures.**  If a Participant terminates his employment with the Employer and all Related Employers before his vested interest in his Matching Employer and/or Nonelective Employer Contributions sub-accounts is 100 percent, the non-vested portion of his Account (including any amounts credited after his termination of employment) shall be forfeited by him as follows:

(a) If the Inactive Participant elects to receive distribution of his entire vested interest in his Account, the non-vested portion of his Account shall be forfeited upon the complete distribution of such vested interest, subject to the possibility of reinstatement as provided in Section 11.10.  For purposes of this Subsection, if the value of an Employee's vested interest in his Account balance is zero, the Employee shall be deemed to have received a distribution of his vested interest immediately following termination of employment.

(b) If the Inactive Participant elects not to receive distribution of his vested interest in his Account following his termination of employment, the non-vested portion of his Account shall be forfeited after the Participant has incurred five consecutive Breaks in Vesting Service.

Except as otherwise provided in the Adoption Agreement, no forfeitures shall occur solely as a result of a Participant's withdrawal of Employee Contributions.

**11.09.** **Application of Forfeitures.**  Any forfeitures occurring during a Plan Year may be used to pay administrative expenses under the Plan at any time, if so directed by the Administrator.  Except as provided otherwise in the Adoption Agreement, any forfeitures not used to pay administrative expenses under the Plan shall be applied to reduce the contributions of the Employer for the immediately following Plan Year and held and applied in accordance with this Section 11.09.

Pending application, forfeitures shall be invested as directed by the Investment Fiduciary.

Pre-Approved Defined Contribution Plan – 06/30/2020                                          Basic Plan Document 17

© 2020 FMR LLC
All rights reserved.

Except as permitted pursuant to EPCRS and notwithstanding any other provision of the Plan to the contrary, in no event may forfeitures be used to reduce the Employer's obligation to remit to the Trust (or other appropriate Plan funding vehicle) loan repayments made pursuant to Article 9, Deferral Contributions, or Employee Contributions.

**11.10. Reinstatement of Forfeitures.** If a Participant forfeits any portion of his Account under Subsection 11.08(a) because of distribution of his complete vested interest in his Account, but again becomes an Eligible Employee, then the amount so forfeited, without any adjustment for the earnings, expenses, losses, or gains of the assets credited to his Account since the date forfeited, shall be recredited to his Account (or to a separate account as described in Section 11.07, if applicable) if he repays the entire amount of his distribution not attributable to Employee Contributions or Rollover Contributions before the earlier of:

(a) his incurring five-consecutive Breaks in Vesting Service following the date complete distribution of his vested interest was made to him; or

(b) five years after his Reemployment Commencement Date.

If an Employee is deemed to have received distribution of his complete vested interest as provided in Section 11.08, the Employee shall be deemed to have repaid such distribution on his Reemployment Commencement Date.

Upon such an actual or deemed repayment, the provisions of the Plan (including Section 11.07) shall thereafter apply as if no forfeiture had occurred. The amount to be recredited pursuant to this paragraph shall be derived first from the forfeitures, if any, which as of the date of recrediting have yet to be applied as provided in Section 11.09 and, to the extent such forfeitures are insufficient, from a special contribution to be made by the Employer.

**11.11. Adjustment for Investment Experience.** If any distribution under this Article 11 is not made in a single payment, the amount retained by the Trustee after the distribution shall be subject to adjustment until distributed to reflect the income and gain or loss on the investments in which such amount is invested and any expenses properly charged under the Plan and Trust to such amounts.

Article 12.  Distributions.

**12.01. Restrictions on Distributions.**

(a) Severance from Employment Rule. A Participant, or his Beneficiary, may not receive a distribution from the Participant's Deferral Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Employer Contributions, 401(k) Safe Harbor Matching Employer Contributions or 401(k) Safe Harbor Nonelective Employer Contributions sub-accounts earlier than upon the Participant's severance from employment with the Employer and all Related Employers, death, or disability, except as otherwise provided in Article 10, Section 11.02 or Section 12.04. If the Employer elected Subsection 1.21(c) of the Adoption Agreement, distribution from the Participant's Deferral Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Employer Contributions, 401(k) Safe Harbor Matching Employer Contributions or 401(k) Safe Harbor Nonelective Employer Contributions sub-accounts may be further postponed in accordance with the provisions of Subsection 12.01(b) below.

(b) Same Desk Rule. If the Employer elected in Subsection 1.21(b) of the Adoption Agreement to preserve the separation from service rules in effect for Plan Years beginning before January 1, 2002, a Participant, or his Beneficiary, may not receive a distribution from the Participant's Deferral Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Employer Contributions, 401(k) Safe Harbor Matching Employer Contributions or 401(k) Safe Harbor Nonelective Employer Contributions sub-accounts earlier than upon the Participant's separation from service with the Employer and all Related Employers, death, or disability, except as otherwise provided in Article 10, Section 11.02 or Section 12.04. Notwithstanding the foregoing, amounts may also be distributed from such sub-accounts, in the form of a lump sum only, upon:

(1) The disposition by a corporation to an unrelated corporation of substantially all of the assets (within the meaning of Code Section 409(d)(2)) used in a trade or business of such corporation if such corporation continues to maintain the Plan with respect to the Participant after the disposition, but only with respect to former Employees who continue employment with the corporation acquiring such assets.

© 2020 FMR LLC
All rights reserved.
43

# PRE-APPROVED
# DEFINED CONTRIBUTION PLAN

## (PROFIT SHARING/401(K) PLAN)

### A FIDELITY PRE-APPROVED PLAN

**Adoption Agreement No. 001**
**For use With**
**Fidelity Basic Plan Document No. 17**

*FMR LLC and its affiliates do not provide tax or legal advice. Nothing herein or in any attachments hereto should be construed, or relied upon, as tax or legal advice.*

*IRS CIRCULAR 230 DISCLOSURE: To the extent this document (including attachments), mentions or references any tax matter, it is not intended or written to be used, and cannot be used by the recipient or any other person, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party the matter addressed herein. Please consult an independent tax advisor for advice on your particular circumstances.*

Pre-Approved Defined Contribution Plan – 06/30/2020

PS Plan
33738-1695715760AA

© 2020 FMR LLC
All rights reserved.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.01 | PLAN INFORMATION | 1 |
| 1.02 | EMPLOYER | 3 |
| 1.03 | TRUSTEE | 3 |
| 1.04 | COVERAGE | 3 |
| 1.05 | COMPENSATION | 7 |
| 1.06 | TESTING RULES | 8 |
| 1.07 | DEFERRAL CONTRIBUTIONS | 9 |
| 1.08 | EMPLOYEE CONTRIBUTIONS (AFTER-TAX CONTRIBUTIONS) | 11 |
| 1.09 | ROLLOVER CONTRIBUTIONS | 12 |
| 1.10 | QUALIFIED NONELECTIVE EMPLOYER CONTRIBUTIONS | 13 |
| 1.11 | MATCHING EMPLOYER CONTRIBUTIONS | 13 |
| 1.12 | NONELECTIVE EMPLOYER CONTRIBUTIONS | 18 |
| 1.13 | EXCEPTIONS TO CONTINUING ELIGIBILITY REQUIREMENTS | 22 |
| 1.14 | RETIREMENT | 22 |
| 1.15 | DEFINITION OF DISABLED | 23 |
| 1.16 | VESTING | 23 |
| 1.17 | PREDECESSOR EMPLOYER SERVICE | 24 |
| 1.18 | PARTICIPANT LOANS | 24 |
| 1.19 | IN-SERVICE WITHDRAWALS | 25 |
| 1.20 | FORM OF DISTRIBUTIONS | 26 |
| 1.21 | TIMING OF DISTRIBUTIONS | 27 |
| 1.22 | TOP HEAVY STATUS | 27 |
| 1.23 | CORRECTION TO MEET 415 REQUIREMENTS UNDER MULTIPLE DEFINED CONTRIBUTION PLANS | 28 |
| 1.24 | INVESTMENT DIRECTION | 28 |
| 1.25 | ADDITIONAL PROVISIONS AND PROTECTED BENEFITS | 29 |
| 1.26 | SUPERSEDING PROVISIONS | 29 |
| 1.27 | RELIANCE ON OPINION LETTER | 29 |
| 1.28 | ELECTRONIC SIGNATURE AND RECORDS | 30 |
| 1.29 | PRE-APPROVED PLAN PROVIDER'S INFORMATION | 30 |
| EXECUTION PAGE | | 31 |
| SPECIAL EFFECTIVE DATES ADDENDUM | | 32 |
| IN-SERVICE WITHDRAWALS ADDENDUM | | 33 |
| FIDUCIARY ADDENDUM | | 34 |
| ADDITIONAL PROVISIONS ADDENDUM | | 35 |
| ADDENDUM TO ADOPTION AGREEMENT | | 36 |
| PRE-APPROVED DEFINED CONTRIBUTION PLAN | | 38 |

© 2020 FMR LLC
All rights reserved.

# ADOPTION AGREEMENT
# ARTICLE 1
# PROFIT SHARING/401(K) PLAN

**1.01** **PLAN INFORMATION**

    **(a)** *Name of Plan*:

        This is the <u>United Wholesale Mortgage, LLC Profit Sharing Plan and Trust</u> (the "Plan")

    **(b)** *Type of Plan:*

        **(1)** ☐ 401(k) Only

        **(2)** ☑ 401(k) and Profit Sharing

        **(3)** ☐ Profit Sharing Only

    **(c)** *Fiduciary Structure*:

        **(1)** Except to the extent elected otherwise below, the Employer shall be the Administrator in accordance with Article 19 of the Basic Plan Document and the Investment Fiduciary as defined in Section 2.01(ee).

            **(A)** ☐ Name of Administrator (if not the Employer): _____

            **(B)** ☐ Name of Investment Fiduciary (if not the Administrator): _____

            **(C)** ☐ Fiduciary duties shall be allocated as described on the Fiduciary Addendum.

        **(2)** ☑ See Fiduciary Addendum for other applicable provisions.

    **(d)** *Plan Year End* (month/day): <u>12/31</u>

    **(e)** *Three Digit Plan Number*: <u>001</u>

    **(f)** *Limitation Year* (check one):

        **(1)** ☐ Calendar Year

        **(2)** ☑ Plan Year

        **(3)** ☐ Other, (12-month period ending on the following date): _____

    **(g)** *Plan Status*:

        **(1)** Adoption Agreement Effective Date: <u>11/15/2023</u> (cannot be earlier than the later of (i) the first day of the current Plan Year or (ii) the effective date of the Plan)

**1.15** **DEFINITION OF DISABLED**

A Participant is disabled if he/she meets any of the requirements selected below:

**(a)** ☐ The Participant is eligible for benefits under the Employer's long-term disability plan.

**(b)** ☐ The Participant is eligible for Social Security disability benefits.

**(c)** ☐ The Participant is determined to be disabled by the Participant's physician.

**(d)** ☒ See Additional Provisions Addendum.

**1.16** **VESTING**

A Participant's vested interest in Matching Employer Contributions and/or Nonelective Employer Contributions, other than those described in Subsection 5.11(a) of the Basic Plan Document, shall be based upon his years of Vesting Service and the schedule selected in Subsection 1.16(c) below, except as provided in the Eligibility, Service and Vesting Addendum to the Adoption Agreement or as provided in Subsection 1.22(c).

**(a)** When years of Vesting Service are determined, the elapsed time method shall be used.

**(b)** ☐ Years of Vesting Service shall exclude service prior to the Plan's original effective date as listed in Subsection 1.01(g)(1) or Subsection 1.01(g)(2), as applicable.

**(c)** *Vesting Schedule(s)*

| (1) Nonelective Employer Contributions (check one): | (2) Matching Employer Contributions (check one): |
|---|---|
| **(A)** ☐ N/A - No Nonelective Employer Contributions | **(A)** ☐ N/A – No Matching Employer Contributions |
| **(B)** ☐ 100% Vesting immediately | **(B)** ☐ 100% Vesting immediately |
| **(C)** ☐ 3 year cliff (see **C** below) | **(C)** ☐ 3 year cliff (see **C** below) |
| **(D)** ☐ 6 year graduated (see **D** below) | **(D)** ☐ 6 year graduated (see **D** below) |
| **(E)** ☒ Other vesting (complete **E1** below) | **(E)** ☒ Other vesting (complete **E2** below) |

| Years of Vesting Service | Applicable Vesting Schedule(s) | | | |
|---|---|---|---|---|
| | C | D | E1 | E2 |
| 0 | 0% | 0% | 0% | 0% |
| 1 | 0% | 0% | 20% | 20% |
| 2 | 0% | 20% | 40% | 40% |
| 3 | 100% | 40% | 60% | 60% |
| 4 | 100% | 60% | 80% | 80% |
| 5 | 100% | 80% | 100% | 100% |
| 6 or more | 100% | 100% | 100% | 100% |

© 2020 FMR LLC
All rights reserved.

**Note:** A schedule elected under E1 or E2 above must be, at each year, at least as favorable as one of the schedules in C or D above. If the vesting schedule is amended, any such amendment must satisfy the requirements of section 16.04 of the Basic Plan Document.

**Note:** The amendment of the plan to add a Fixed Nonelective Employer Contribution, Discretionary Nonelective Employer Contribution, 401(k) Safe Harbor Nonelective Employer Contribution, Fixed Matching Employer Contribution, Discretionary Matching Employer Contribution, Additional Matching Employer Contribution, or 401(k) Safe Harbor Matching Employer Contribution and an attendant vesting schedule does not constitute an amendment to a vesting schedule under Section 1.16(e) below, unless a contribution source of the same type exists under the Plan on the effective date of such amendment. Any amendment to the vesting schedule of one such contribution source shall not require the amendment of the vesting schedule of any other such contribution source, notwithstanding the fact that one or more Participants may be subject to different vesting schedules for such different contribution sources.

**(d)** ☐ A vesting schedule or schedules different from the vesting schedule(s) selected above applies to certain Participants. See Eligibility, Service and Vesting Addendum to the Adoption Agreement.

**(e)** If the Plan's vesting schedule is amended and an Active Participant's vested interest, as calculated by using the amended vesting schedule, is less in any year than the Active Participant's vested interest calculated under the Plan's vesting schedule immediately prior to the amendment, the amended vesting schedule shall apply only to Employees first hired on or after the effective date of the change in vesting schedule.

**1.17 PREDECESSOR EMPLOYER SERVICE**

**(a)** ☑ Section 3.05 of the Basic Plan Document requires service to be credited for purposes of eligibility under Subsection 1.04(b) and vesting under Subsection 1.16 in certain situations. Additionally, the Plan shall credit service for such purposes in the following situations):

**(1)** ☑ Service with the following employer(s) (for the employees and time periods described, if applicable):

<u>Capital Mortgage Funding, L.L.C., but only with respect to service prior to 8/3/2021</u>

**(2)** ☐ Additional grants of service of a more general nature (e.g., covering situations such as corporate actions or mergers). See Eligibility, Service and Vesting Addendum.

**1.18 PARTICIPANT LOANS**

**(a)** ☑ Participant loans are allowed in accordance with Article 9 of the Basic Plan Document. Except as otherwise provided below, if a Participant has an outstanding loan balance at the time his employment terminates, the entire outstanding principal and accrued interest shall be due and payable by the end of the cure period specified in the separate loan procedures. Notwithstanding the foregoing, if a Participant with an outstanding loan balance terminates employment with the Employer and all Related Employers in conjunction with a transfer of Employees and Employer assets to an entity unrelated to the Employer, such Participant may elect, within 90 days of such termination, to roll over the outstanding loan to an eligible retirement plan, as defined in Section 13.04 of the Basic Plan Document, that accepts such rollovers.

**(1)** ☐ If a Participant with an outstanding loan balance terminates employment with the Employer and all Related Employers, the outstanding principal and accrued interest on such loan shall not be immediately due and payable as provided in Section 9.11 of the Basic Plan Document. Instead, such loan shall continue to be payable in accordance with the provisions of the loan note and Article 9. Notwithstanding the foregoing, if a

# EXECUTION PAGE

**Plan Name**: <u>United Wholesale Mortgage, LLC Profit Sharing Plan and Trust</u> (the "Plan")

**Employer**: <u>United Wholesale Mortgage, LLC</u>

The Fidelity Basic Plan Document No. 17 and the accompanying Adoption Agreement together comprise the Pre-Approved Defined Contribution Plan. It is the responsibility of the adopting Employer to review this Pre-Approved Plan with its legal counsel to ensure that the Pre-Approved Plan is suitable for the Employer and that the Adoption Agreement has been properly completed prior to signing.

IN WITNESS WHEREOF, the Employer has caused this Adoption Agreement to be executed on ==10/11/2023 | 5:42:10 PM EDT== .

| | |
|---|---|
| Employer: | United Wholesale Mortgage, LLC |
| By: | *Michelle Salvatore* (DocuSigned by: 67441ABD4E9A4A4...) |
| Title: | ==SVP, Team Member Services== |

**Note:** Only one authorized signature is required to execute this Adoption Agreement unless the Employer's corporate policy mandates two authorized signatures.

| | |
|---|---|
| Employer: | United Wholesale Mortgage, LLC |
| By: | |
| Title: | |

Note: This page may be duplicated, if needed, to allow separate execution when the Employer indicated in Section 1.02(a) is changing.