UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTOPHER I. LAPKO, et al.,

Plaintiffs,

v.

UNITED WHOLESALE MORTGAGE LLC, and UNITED WHOLESALE MORTGAGE LLC 401(k) COMMITTEE,

Defendants.

_______________________________________/

Case No. 2:25-cv-11216

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 15) AND DISMISSING THE CASE**

This case turns on how an employer used excess funds in its 401(k) accounting. Plaintiffs Kristopher I. Lapko, Alan P. Tucsok, and Becky Forbush are suing Defendants United Wholesale Mortgage LLC ("UWM") and United Wholesale Mortgage LLC 401(k) Committee ("the Plan Committee") on behalf of themselves and a class of participants and beneficiaries of UMW's Profit Sharing Plan and Trust (the "Plan"). Plaintiffs allege that Defendants improperly used Plan forfeitures for self-gain to reduce UWM's contributions in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. Defendants move to dismiss, arguing that their actions were proper under the Plan and precedent.

For the reasons provided below, this Court will grant the motion and dismiss the case.

## I. BACKGROUND

The following factual allegations come from Plaintiffs' complaint, and they are largely undisputed. ECF No. 1. At the motion-to-dismiss stage, these facts must be accepted as true with all reasonable inferences drawn in Plaintiffs' favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the pleadings, this Court may also consider documents that are public record or that are "referred to in the pleadings and [are] integral to the claims." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). Such documents include "relevant plan documents" in ERISA cases. *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 903 (E.D. Mich. 2008); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that even when plan documents are not included, a court can consider "plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.").

### A. The Plan

UWM "is the largest mortgage lender in the United States" and offers a contribution employee pension benefit plan (the Plan) to its employees. ECF No. 1 at PageID.1, 3. The Plan's assets are held in a trust fund and administered by its

fiduciary, the Plan Committee. *Id.* at PageID.4, 7. As of December 31, 2023, the Plan had $149,463,886 in assets and 7,231 participants, making it one of the largest retirement plans in the United States. *Id.* at PageID.5. The Plan's assets are built by participants' contributions from their wage withholdings and matching contributions by UWM. *Id.* at PageID.7.

"[A]fter five years of credited service," a participant's full ownership over UWM's contributions vests. *Id.* at PageID.8. If an employee leaves UWM's employ before fully vesting, any portion of a participant's Plan account that has not vested is considered a forfeiture, "lost upon termination of employment." *Id.* According to the Plan's terms, the Plan Committee "may" use annual forfeitures "to pay administrative expenses." *Id.*; *see also* ECF No. 15-3 at PageID.104. For any forfeitures not used for this purpose, the Plan Committee "shall" apply the forfeitures to reduce UWM's contributions.[1] ECF Nos. 15-3 at PageID.104; 1 at PageID.8.

**B. The Complaint**

Plaintiffs are former UWM employees and Plan participants who made contributions to the Plan. ECF No. 1 at PageID.7. In 2025, Lapko, Tucsok, and

[1] The Plan states that forfeitures "shall" be applied to reduce UWM's contributions, except as otherwise provided in the "Adoption Agreement"—Article 1 of the Plan under which UWM "establishes and adopts, or amends the Plan and designates the optional provisions selected by" UWM. ECF Nos. 15-3 at PageID.102, 104; 1 at PageID.8. However, neither Party provided a copy of the Adoption Agreement for this Court to consider.

Forbush became aware of Defendants' alleged "misuse and misallocation of Plan forfeitures" and breaches of fiduciary duties from 2018 to 2023. *Id.* at PageID.5, 7, 9. Accordingly, on April 28, 2025, Plaintiffs filed this civil suit individually and on behalf of a putative class.[2] *See* ECF No. 1.

In their Complaint, Plaintiffs allege that Defendants violated ERISA's imposed duties of prudence, loyalty, and refrainment from self-dealing "by allocating all forfeitures toward reducing UWM's outstanding and unpaid contributions" rather than toward Plan-required administrative expenses. *Id.* at PageID.14. Not only did this "cost the Plaintiffs and class members tens of millions of dollars" that should have been used to defray Plan expenses, but this also demonstrated a clear conflict of interest because UWM as the employer is operating as both the Plan administrator and the Plan sponsor. *Id.* at 7, 14. Plaintiffs allege that participants' potential cumulative compounded losses amounted to $1,857,731.[3] *Id.* at PageID.11.

---

[2] Plaintiffs define the class as participants and beneficiaries of the UWM Plan from either April 28, 2019, or "through the date of judgment" if this Court finds that Defendants fraudulently concealed facts necessary to apprise Plaintiffs of the alleged violations. ECF No. 1 at PageID.14.

[3] Plaintiffs arrive at this number by using financial statement notes for the Plan's annual Form 5500s filed with the Internal Revenue Service (IRS) to generate a chart that depicts the forfeitures allegedly not used to pay Plan expenses. ECF No. 1 at PageID.9–11. However, Plaintiffs do not provide copies of those forms or explain their math enough for this Court to understand the justification for the total sum

Defendants moved to dismiss the Complaint, arguing generally that Plaintiffs' claims supersede the bounds of ERISA duties, contradict "60 years of guidance issued by the federal legislators and regulators" that allows forfeitures to be used to reduce employer contributions to 401(k) plans, and are otherwise implausible by the plain language of the Plan and relevant authority. ECF No. 15 at PageID.76. Plaintiffs responded, ECF No. 21, and Defendants replied,[4] ECF No. 22. This Court has determined that a hearing on the motion is not necessary and will decide it on the papers. *See* E.D. Mich. LR 7.1(f)(2).

---

alleged. Nevertheless, at the motion-to-dismiss stage, this Court will construe the sum alleged as true. *See Lambert*, 517 F.3d at 439.

[4] Plaintiffs also moved for leave to file supplemental authorities, ECF Nos. 24; 37; 39; 40–41; 43, which this Court granted. In contrast, Defendants filed seven notices of supplemental authorities without seeking this Court's leave. ECF Nos. 19; 25; 27; 29; 31; 35; 38. Plaintiffs filed objections to each. ECF Nos. 20; 26; 28; 30; 32; 36. Because Defendants did not move for leave to file these supplements, this Court declines to take notice of them. *See* E.D. Mich. LR 7.1(d)(1)(A) ("Unless the court permits otherwise, each motion and response to a motion must be accompanied *by a single brief*.") (emphasis added); *see also Albino-Martinez v. Adducci*, 454 F. Supp. 3d 642, 646–47 (E.D. Mich. 2020) ("Parties do not have a right to file a surreply brief under the federal procedural or local rules."); *Perry v. Silverthon*, No. 24-10194, 2026 WL 252739, at *2 (E.D. Mich. Jan. 30, 2026) (requiring leave to file a surreply); *Gentry v. Sikorsky Aircraft Corp.*, No. 18-1326, 2018 WL 6329147, at *2 (E.D. Pa. Dec. 4, 2018) (construing newly filed supplemental materials as surreplies and declining to consider them because "[u]nlike supplemental *pleadings*, leave to file supplemental *briefs or submissions*, i.e., sur-replies, is not liberally granted"). In the event that this Court cites any authority Defendants provided as supplements, the citations are the result of this Court's own independent research.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439. The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Otherwise, the Court must grant the motion to dismiss. *See Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Plaintiffs bring four claims against the Plan Committee for choosing to use forfeitures allegedly for UWM's benefit instead of for the benefit of Plaintiffs and other Plan participants: (1) breach of duty of loyalty under 29 U.S.C. § 1104(a)(1)(A); (2) breach of duty of prudence under 29 U.S.C. § 1104(a)(1)(B); (3) "fiduciary prohibited transactions" for self-dealing under 29 U.S.C. § 1106(b);

and (4) "party-in-interest prohibited transactions" for employer UWM's benefit under 29 U.S.C. § 1106(a)(1)(D). ECF No. 1 at PageID.16–20. Although Plaintiffs aim to hold UWM liable for these counts as well under 29 U.S.C. § 1109(a), Plaintiffs bring an additional, specific claim against UWM, alleging misallocation of forfeitures as a failure to adequately monitor the Plan Committee pursuant to the Plan's terms. *Id.* at PageID.20–22.

Defendants respond that the first two counts are implausible by the Plan's plain language stating that forfeitures may—not must—be used to offset Plan expenses; that decades of authority permit the use of forfeitures to reduce employer contributions; and that the duties ERISA imposes do not supplant the proper terms of the Plan. ECF No. 15 at PageID.76–85. Defendants argue that the third and fourth counts should be dismissed because "the lawful use of plan assets" does not constitute a prohibited fiduciary transaction within the meaning of ERISA. *Id.* at PageID.86; *see also id.* at PageID.87–88. And because, as Defendants argue, the first four counts should be dismissed, Defendants assert that the fifth, derivative count must necessarily be dismissed as well. *Id.* at PageID.89.

For the following reasons, this Court finds that Plaintiffs' claims do not warrant relief that can be granted under ERISA, so the case will be dismissed.

**A. Duty of Loyalty (Count I)**

"A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 464 (6th Cir. 2022). Although forfeitures do not belong to a specific beneficiary or entity, ERISA's fiduciary duties apply to those who use forfeitures because forfeitures are still trust assets of the Plan. *See Donelson v. Meijer, Inc.*, 826 F. Supp. 3d 898, 901 (W.D. Mich. 2025) (collecting cases); *see also* 29 U.S.C. § 1104(a)(1) (applying fiduciary duties to actions taken "with respect to a plan"). One such duty that ERISA imposes is a duty of loyalty wherein a fiduciary of a plan must act "solely in the interests of the participants and beneficiaries," including "providing benefits to participants and their beneficiaries; and [] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). These provided benefits are circumscribed by the terms of the Plan, because "the written ERISA plan documents govern the rights and benefits of EIRSA plan beneficiaries." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010). Indeed, as the United States Supreme Court held: "It is of course true that the fiduciary obligations of plan administrators are to serve the interest of participants and beneficiaries, and, specifically, to provide them with the benefits authorized by the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

Here, the first element is satisfied because the Plan Committee is a plan fiduciary. *See Chelf*, 31 F.4th at 464. As for the other elements, Plaintiffs argue that the Plan Committee breached its duty of loyalty to their financial detriment because by the Plan's terms, Defendants were obligated to use forfeitures to pay administrative expenses for Plaintiffs' benefit. But the plain language of the Plan[5] does not support this conclusion. *See Andrews v. Colum. Gas Transmission Corp.*, 544 F.3d 618, 632 (6th Cir. 2008) (relying on the plain meaning of an agreement and finding that "[t]he plain and ordinary meaning of [the agreement's] words is clear"); *see also Bloemker*, 605 F.3d at 444. The Plan states that any forfeitures from a particular year "*may* be used to pay administrative expenses" at the Plan Committee's directive, not that the Plan Committee *shall* use forfeitures to pay these

[5] To the extent that Plaintiffs rely on the language in financial statement notes attached to annual IRS Form 5500s, Plaintiffs have not established that such notes are in any way the operative and governing documents for the Plan that confer benefits to Plaintiffs. *See Bloemker*, 605 F.3d at 444 ("[T]he written ERISA plan documents govern the rights and benefits of ERISA plan beneficiaries."); *see also Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 425 (6th Cir. 2014) ("[W]e recognize the superiority of the written plan documents" when considering a breach of duty claim under ERISA); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 878 (D. Ariz. 2025) ("Plaintiffs simply have not shown that the Form 5500s created any binding legal obligation for [the employer] to use forfeitures to pay administrative expenses" because the form reports do "not govern [the p]laintiffs' rights and [the employer's] obligations, the Plan document does."). Similarly, Plaintiffs have not shown that "the Plan's November 2023 Summary Plan Description" is an operative ERISA plan document, but even if they had, the language aligns with the Plan's provision that forfeitures "may be used to pay administrative expenses," not *must* be used. ECF No. 1 at PageID.8.

expenses. ECF Nos. 1 at PageID.8 (emphasis added); 15-3 at PageID.104 (emphasis added). Plaintiffs are correct that this is a discretionary decision for the Plan Committee to make, but Plaintiffs' reasoning would take this discretion away from the Plan Committee by *requiring* forfeitures to be used for administrative expenses.

Such reasoning is contrary to ERISA's functions. ERISA is designed to protect Plan benefits, not create or supersede them. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *see also Russell*, 473 U.S. at 148 (holding that ERISA's "repeatedly emphasized purpose [is] to protect contractually defined benefits" in a plan); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (holding that recoverable damages under ERISA are limited by the benefits promised in a plan). Although ERISA does not protect plans that are blatantly inconsistent with its requirements, Plaintiffs have not shown that a plan permitting forfeitures to be used for administrative expenses or employer contributions is inconsistent with ERISA's fiduciary requirements. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (noting that ERISA's prudence duty would supersede a plan that instructs assets to be invested "exclusively in employer stock even if financial goals demand the contrary").

Not only does ERISA lack provisions requiring fiduciaries to use forfeitures in specific ways, but to construe ERISA as requiring the Plan Committee to use forfeitures for administrative expenses would override the permissive language in

the Plan's benefit language, converting the "may" into a "must." *See Donelson*, 826 F. Supp. 3d at 902 (rejecting the argument "that the discretionary choice provided in the plan, combined with [the employer's] fiduciary duties, would indicate to any employee reading the plan that [the employer] would use the forfeitures to reduce expenses"); *see also McCutchen*, 569 U.S. at 101 ("The plan, in short, is at the center of ERISA. And precluding [the plaintiff]'s equitable defenses from overriding plain contract terms helps it to remain there.").

In short, the Plan's forfeiture provision does not require Defendants to use forfeitures to pay administrative expenses, and ERISA's duty of loyalty cannot convert its permissive language into an obligation. *See Lockheed Corp.*, 517 U.S. at 887 (observing that ERISA is designed to protect an employee's promised benefits but that ERISA does not "mandate what kind of benefits employers must provide if they choose to have such a plan"). Indeed, ERISA does not transform the Plan's discretionary choice into a fiduciary breach merely because another permissible choice could have produced a greater economic benefit for participants. *See Parker v. Tenneco Inc.*, No. 23-10816, 2026 WL 852046, at *6 (E.D. Mich. Mar. 27, 2026) ("Although the forfeitures were not used in the manner [the p]laintiffs preferred, it is undisputed that the forfeitures" were still being used to provide benefits to the plan's participants by substituting the employer's contributions, so the plaintiffs did "not sufficiently explain why a defined contribution plan requires employers to use

of forfeitures in certain way and not in others."). Therefore, Plaintiffs have not stated a claim for breach of a fiduciary duty of loyalty based on the Plan Committee's use of forfeitures to reduce UWM's contributions, and this claim will be dismissed. *See id.*; *see also Donelson*, 826 F. Supp. 3d at 904 (collecting cases).

**B. Duty of Prudence (Count II)**

Plaintiffs also allege that the Plan Committee breached ERISA's duty of prudence by using a flawed decision-making process to benefit UWM instead of considering how participants may be better served by using forfeitures toward administrative expenses. ECF No. 1 at PageID.18. Under ERISA, a fiduciary must fulfill its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "The test for determining whether the duty of prudence has been violated or not focuses on the *process* used by the fiduciaries," which asks whether the plan administrator "'at the time [it] engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 685 (E.D. Mich. 2021) (quoting *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015)). The test is necessarily

context specific. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164–65 (6th Cir. 2022).

In many ways, Plaintiffs' argument boils down to attacking the Plan Committee's discretionary decisions, essentially repackaging their duty-of-loyalty argument. *See Donelson*, 826 F. Supp. 3d at 903–04. Thus, the preceding analysis applies with the same conclusion.

But even aside from this, Plaintiffs have not alleged facts that support an inference that a proper process or investigation would have produced a different result. As the Sixth Circuit noted:

> [P]ointing to an alternative course of action . . . will often be necessary to show a fund acted imprudently (and to prove damages). But that factual allegation is not by itself sufficient. In addition, these claims require evidence that [the chosen action] was imprudent from the moment the administrator selected it, that [it] became imprudent over time, or that [it] was otherwise clearly unsuitable for the goals of the fund.

*CommonSpirit*, 37 F.4th at 1166. Plaintiffs alleged that the Plan Committee should have chosen to use forfeitures to pay administrative expenses but have not alleged facts as to how choosing to do otherwise was imprudent.

Plaintiffs further argue that the Plan Committee failed to take appropriate steps to investigate "whether there was a risk of UWM defaulting on its plan contributions if forfeitures were used to pay Plan expenses." ECF No. 1 at PageID.13. But even if this Court were to assume UWM was financially capable of

making its contributions, and given that the Plan allows the Plan Committee to use forfeitures to reduce UWM's contributions—in fact requiring it to do so when forfeitures are not otherwise used for other purposes—Plaintiffs have not established why would a prudent fiduciary would necessarily have chosen to pay administrative expenses instead. *See England v. DENSO Int'l Am., Inc.*, No. 22-11129, 2023 WL 4851878, at *6 (E.D. Mich. July 28, 2023) (dismissing claims that a plan administrator was imprudent for not choosing a revenue-sharing investment option that would have made net expenses lower "because a prudent ERISA fiduciary *might* choose an investment option based on revenue sharing but is not *required* to do so") (emphases added).

Plaintiffs also argue that the Plan Committee should have sought an "independent non-conflicted decisionmaker to advise" by alleging that the Plan Committee had a conflict of interest. ECF Nos. 21 at PageID.193; 1 at PageID.13. Plaintiffs appear to ground this allegation in the fact that UWM "is both the plan sponsor and plan administrator." ECF No. 1 at PageID.7, 18. But Plaintiffs clearly state that the Plan administrator is the Plan Committee, a body of members appointed by UWM's Board of Directors. *Id.* at PageID.3. Although UWM may select members, Plaintiffs have not alleged that UWM and its directors themselves are members of the Plan Committee.

Moreover, there is no automatic conflict of interest where a plan sponsor is also the plan's administrator, given that ERISA expressly permits an entity to be both. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (observing that the company "was *both* an employer *and* the benefit plan's administrator, as ERISA permits") (emphases in original); *see also* 29 U.S.C. §§ 1002(16) (defining the plan administrator as the entity specifically designated as such or "if an administrator is not so designated, the plan sponsor"), 1108(c)(3) (allowing an employer to be a plan sponsor and administrator). Thus, Plaintiffs' arguments about conflicts of interest do not identify a uniquely imprudent process by Defendants but rather insufficiently challenge the fundamental principles regarding who can be a plan administrator. Accordingly, Plaintiffs have not sufficiently pleaded a breach-of-prudence claim, so this claim will be dismissed. *See generally Varity Corp.*, 516 U.S. at 498; *see also Donelson*, 826 F. Supp. 3d at 903–04.

**C. Prohibited Transactions (Counts III and IV)**

Plaintiffs also argue that Defendants' forfeiture use was for UWM's personal interests, constituting prohibited transactions under § 1106(a)(1)(D) and (b). ECF No. 1 at PageID.19–20. Defendants contend that their use of the forfeitures does not constitute prohibited fiduciary transactions within the meaning of ERISA. ECF No. 15 at PageID.86–88. This Court finds that the Defendants' use of the forfeitures are permitted under ERISA, so these claims will be dismissed.

Subject to certain exceptions, a fiduciary "shall not cause the plan to engage in a transaction" where such a transaction constitutes a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). Nor shall a fiduciary "deal with the assets of the plan in his own interest or for his own account, . . . act . . . on behalf of a party" with interests adverse to the plan or plan's participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b). A "party in interest" includes "any fiduciary" and "an employer of any whose employees are covered by such plan." 29 U.S.C. § 1002(14).

A "transaction" under ERISA's prohibition section is one that uses plan assets in a way that is "potentially harmful to the plan," such as lending, leasing property, or furnishing goods or services. *Lockheed Corp.*, 517 U.S. at 893 (noting that "[t]hese are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders"). But actions like paying benefits "conditioned on performance by plan participants" do not share this characteristic and are therefore outside the scope of § 1106. *Id.* A transaction for the "benefit" of an interested party does not include transferring plan assets among employee accounts under a legitimate retirement plan. *Holliday v. Xerox Corp.*, 732 F.2d 548, 551 (6th Cir. 1984).

Here, transferring forfeiture funds is not commercial in nature, nor have Plaintiffs shown that doing so is "potentially harmful to the [P]lan." *Lockheed Corp.*, 517 U.S. at 893. It seems contradictory to argue that using forfeitures to match employee contributions is to the Plan's detriment when doing so keeps the Plan funded and fulfills its promise to Plan participants and beneficiaries. *See id.* Thus, these transfers do not appear to be prohibited transactions within § 1106's scope. *See id.*

Additionally, the Western District of Michigan recently found that forfeitures used to reduce an employer's contributions to a retirement plan were not prohibited transactions under ERISA on the basis of Sixth Circuit precedent. *Donelson*, 826 F. Supp. 3d at 905 (citing *Holliday*, 732 F.2d at 551). This Court finds this reasoning persuasive. As the court stated, the plaintiffs' arguments under § 1106 were

> foreclosed by *Holliday*. There, the Sixth Circuit reasoned that the employer's transfer of pension funds to reduce its own monetary obligations did not violate an ERISA provision mandating that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103; *Holliday*, 732 F.2d at 551. It explained that the transfer was not "a prohibited 'benefit'" because the employer "could have accomplished the same result by" amending the retirement plan. *Holliday*, 732 F.2d at 551. In other words, the provisions of ERISA that limit an employer's ability to benefit from a fiduciary's actions are inapplicable where the employer could achieve the same benefit via plan amendment. Thus, because [the defendant] could have implemented an amendment requiring forfeitures to go toward employer contributions, it could also achieve that same outcome by acting as a fiduciary without violating ERISA.

*Id.*

True, courts outside this Circuit continue to disagree whether these sections of ERISA apply to a fiduciary's money transfers within an account, especially regarding forfeitures. *See Parker*, 2026 WL 852046, at *5 n.8 (collecting cases); *contrast Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 897 (C.D. Ill. 2025) ("[T]ransactions tend to involve multiple parties and some sort of exchange between them.") *and Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 868 (N.D. Cal. 2024) ("Plaintiff's allegations show that forfeited amounts remain Plan assets and are merely reallocated to provide pension benefits to other employees through use as matching contributions. But this is not a prohibited transaction."), *with Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 949 (N.D. Cal. 2024) ("Here the alleged 'transaction' is [the employer]'s reallocation of undisputed plan assets to reduce its own matching contribution," which is "a direct threat to the Plan itself.") *and Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 WL 2702207, at *6 (S.D. Cal. May 24, 2024) (finding that the plaintiff plausibly alleged prohibited-transaction claims against the defendant employer that use forfeitures to reduce its contributions because this was for its benefit), *recon den*. 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024). But "this Court is not free to decline to follow the Sixth Circuit." *Loo v. Cajun Operating Co.*, 130 F. Supp. 3d 1097, 1104 (E.D. Mich. 2015) (citation omitted).

The holding in *Holliday* is clear: "Congress did not intend [ERISA] to penalize employers for exercising their discretion to make rational economic

decisions which are both in the best interest of the preservation of the fund and which are also not adverse to the employer's interests." 732 F.2d at 552. Indeed, the Sixth Circuit held that an employer transferring funds to offset its contributions had an "obvious primary purpose and effect of benefiting the employees," and that ERISA does not prohibit an additional, "incidental side effect of [those transfers] being prudent from the employer's economic perspective." *Id.* at 551. For these reasons, this Court finds that Defendants did not engage in prohibited transactions, so these claims will be dismissed. *See id.*; *see also Donelson*, 826 F. Supp. 3d at 905.

**D. Duty to Monitor (Count V)**

Lastly, Plaintiffs allege that UWM breached its fiduciary duty to monitor the Plan Committee's decisions regarding forfeitures. "There can be no doubt that the ERISA statutory scheme imposes a duty to monitor upon fiduciaries when they appoint other persons to make decisions about the plan." *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). But because the underlying claims of breaches of fiduciary duties will be dismissed—and Plaintiffs concede that the duty-to-monitor claim is derivative of the other claims, ECF No. 21 at PageID.198—the duty-to-monitor claim must also be dismissed. *See Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 222 (6th Cir. 2024) ("All parties agree that the failure-to-monitor claim is contingent on the survival of the other two claims."); *see also Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2023 WL 3821807, at *8 (E.D. Mich. June

5, 2023) (observing that "a failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary") (citation omitted)). Therefore, this claim will be dismissed. *See Johnson*, 122 F.4th at 222 (holding that failure-to-monitor claims rise and fall with imprudence claims).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 15, is **GRANTED,** hereby **DISMISSING THE CASE**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 23, 2026